OPINION OF THE COURT
Eve Preminger, S.
William Ziegler’s daughter Helen and her children seek to vacate the 1973 decree settling the account of Mr. Ziegler’s executors, in the interest of justice. That decree allocated one more share of GIH, the family corporation, which holds voting control of a publicly held company, American Maize, to Helen’s brother William and his children, than was allocated to Helen’s side. It is undisputed that: the total number of GIH shares allocated between the two children and their issue was a minority of the outstanding GIH shares; the majority interest in GIH was allocated to their mother, Mrs. Rivoire, who died in 1974; William’s side presently controls GIH and therefore American Maize by virtue of owning one more share than Helen’s side; Mrs. Rivoire’s will divided her residuary estate equally between the children and her GIH stock fell into the residue; Helen was a cotrustee of the trust for her side under her father’s will and was a party to the 1973 accounting proceeding in that capacity; Helen was also a coexecutor and cotrustee under her mother’s will.
Helen and her children rely on the fact that the implication of the one share disparity in the allocation of GIH for control of American Maize was not contemplated by her father’s executors, one of whom was the widow, and on the fact that Mr. Ziegler’s will treated his children equally, to support their request that the 1973 decree be modified in the interest of justice. William does not contend that the executors intended the one share disparity in GIH to confer control of GIH. He moves for summary judgment dismissing the vacatur application.
There are two distinct conceptual grounds upon which the one share differential in the 1973 decree could be readjusted: (1) that the decree is not conclusive because the comparative distributions of GIH were not adequately set forth in the accounting; and (2) that the circumstances here warrant the exercise of the court’s inherent power to modify a decree.
Under the general precepts of res judicata, an accounting decree is conclusive not only as to issues which were actively presented and determined, but as to those which could have *205 been raised regarding all matters set forth in the accounting. (See, Scott, Trusts § 220, at 374; Matter of Roche, 259 NY 458; Staples v Mead, 152 App Div 745; Matter of Crawford, 207 Misc 145; Matter of Van Deusen, 24 Misc 2d 611, 612; Matter of Chapin, 171 Misc 783.) Former Surrogate’s Court Act § 274 provided that an accounting decree was "conclusive evidence against all the parties of whom jurisdiction was obtained * * * as to all matters embraced in the account and decree.” It was considered unnecessary to restate this provision in the SCPA because "it states a self-evident fact, that every decree whether upon an accounting or otherwise is binding upon all persons of whom jurisdiction was obtained.” (Revisers’ Notes, SCPA 2226, at 292 [now section 2227].) The question here is thus whether the information regarding the allocation of decedent’s GIH stock was embraced in the accounting, which turns on whether it was adequately disclosed. (See, Matter of Crawford, supra.)
The determination of what constitutes adequate disclosure in an accounting is not a purely mechanical procedure. What is called for is not only a factual description but disclosure which reenforces the special rules governing the duties and powers of the fiduciary. For example, in Matter of Chapin (171 Misc 783, supra) the issue was whether the beneficiaries of a trust could object to the trustee’s investment in a participation in a bond and mortgage on the ground it was not a legal investment, despite the fact that this purchase had been set forth in a prior judicial accounting, where its validity was not challenged. Surrogate Foley held that this objection was precluded by the prior decree because the investment had been reported "with sufficient particularity to apprise the persons interested in the estate as to the nature of it” (supra, at 784). He distinguished a line of cases in which an accounting decree was not preclusive because the acts of the trustees "constituted a breach of trust” (at 785). (Matter of Long Is. Loan & Trust Co., 92 App Div 1, affd 179 NY 520; Matter of Schmidt, 163 Misc 610.) In those cases the prior account had set forth the trustee’s investments but failed to reveal that their purchase was tainted by the trustee’s self-dealing.[1]
No decision goes further in denying preclusive effect to an accounting decree than Matter of Alker (20 AD2d 894, supra). *206 Although the allocation of stock dividends to principal had been plainly set forth in the trustee’s intermediate account and was not challenged by the income beneficiary, her fiduciaries were allowed to object to this allocation in a later proceeding. At that time, the allocation of stock dividends was controlled by the Osborne rule (Matter of Osborne, 209 NY 450) which required a complex apportionment between income and principal based upon the origin of the underlying corporate surplus. Presumably this apportionment was not made correctly in the prior account. Reversing the Surrogate, the Second Department held the decree was not a bar because "under all the circumstances present” (at 895) the disclosure in the account was inadequate, particularly in light of the fact that the trustee was one of the remaindermen and thus benefitted from the allocation to principal.
The disclosure in Alker (supra) can only be seen as inadequate in the sense that the trustee had made a legal mistake in allocating the stock dividends and then had not specifically advised that they might be allocable to income under local law. Moreover, the trustee’s mistake inured to her individual benefit. Alker stands for the proposition that under such circumstances the decree is not preclusive unless the issue was actually determined or the accounting expressly informed the parties that a legally incorrect allocation was being proposed.
It is not contended that the Ziegler executors acted out of self-interest or breached their trust in any way when they allocated the GIH stock, or that it was a mistake of law to make an unequal division of an odd number of shares of stock, balanced out by the allocation of cash in the amount of the fair market value of that extra share. The alleged flaw here was the failure on the part of the executors to anticipate, and then underscore in the accounting, the fact that the one share differential could represent control of Maize if a sequence of certain not unlikely events took place, as they did. The court does not regard the failure to highlight this obvious possibility as a deficiency in disclosure sufficient to open a 20-year-old accounting decree.
The information regarding the allocation of the GIH stock between the siblings and their trusts is quite clear in the accounting, requiring for discovery only routine self-interest on Helen’s part. Since the allocation of the stock bears no taint of self-interest and represents neither a breach of fidu *207 ciary duty, nor a mistaken application of a legal principle, the court holds that the 1973 decree is conclusive.
As to the application to modify the decree, the court agrees with Helen and her children that it has inherent power to reopen a decree in the interest of justice, whether to rectify mistake, inadvertence or otherwise. (See, Legislative Studies and Reports, CPLR 5015, at 481; Siegel, NY Prac §§ 426-431.) There is of course no ready template for this standard. Indeed petitioners concede the facts of this case resemble no other. Where the conventional grounds of fraud, clerical error, or short-lived default are not present, the court should exercise its discretion to grant relief from a long-standing decree only in a very strong case. (Restatement [Second] of Judgments §74.)
The difficulty with the children’s argument that it is unjust to allow the executors’ allocation to determine control of Maize when no one intended that result is that only subsequent events caused the uneven allocation to result in control. Moreover, these events were foreseeable. Petitioners argue both that the allocation was erroneous because this outcome was foreseeable, and that the allocation should be rectified because no one realized its portent. These arguments are mutually exclusive.
It is conceded that decedent bequeathed control of GIH to his widow and it is certainly possible that Mrs. Rivoire was content with the one share disparity, and deliberately did nothing to disturb it in her will. When she executed a new will in 1973 (which did not alter the equal disposition of her residuary estate between her children under her earlier will) William held a dominant position as chairman of the board of Maize. The court cannot assume that she was unaware of the one share differential for which she accounted as coexecutor. Moreover, there was no attempt to try to adjust the one share disparity during the administration of Mrs. Rivoire’s estate in Connecticut, either by a compensating allocation or even by an application to the court for relief. The claim of substantial injustice loses its suasion in the face of the length of time this disparity has remained unchallenged, and the availability of information concerning the disparity.[2]
Determining whether to grant relief from a long-standing *208 decree requires a balancing of what is fair for the individual litigants and for the system of justice. (Restatement [Second] of Judgments § 74.) There is no doubt that the one share differential has a substantial impact on the parties. The difference between having the majority interest in a corporation and being the minority owner by virtue of a one share disparity is one of considerable significance. However it is clear that the 1973 judgment was only one factor responsible for this outcome. At least as important were the repeated failures of those affected to cure the disparity when given the opportunity on a number of occasions. Under these circumstances the court will not disturb a 1973 decree.
Accordingly, the motion for summary judgment is granted.
[Portions of opinion omitted for purposes of publication.]

. It is these cases which refer to the fact that the issue had not actually been raised and determined in the first proceeding. (See, Matter of Alker, 20 AD2d 894.)

. For example, the information as to the comparative interests of the two children and their trusts appear very clearly as a note on the GIH balance sheet going back to 1974.