[827 NE2d 269, 794 NYS2d 286]

In the Matter of the Estate of Blanche D. Hunter, Deceased. Chase Manhattan Bank, as Trustee of the Trust Under Paragraph eighth (b) of the Will of Blanche D. Hunter, Deceased, for the Benefit of Pamela Townley Creighton, Respondent; Judith Chinello et al., as Administrators C.T.A. of the Estate of Pamela Townley Creighton, Deceased, et al., Appellants.

Argued February 10, 2005; decided March 24, 2005

**POINTS OF COUNSEL**

*Williams & Williams,* Rochester (*Mitchell T. Williams* of counsel), for appellants. I. The objections under review are directed against the paragraph EIGHTH (B) trustee, not against the executor or the paragraph EIGHTH (A) trustee. (*Matter of Smather,* 309 NY 487; *Meinhard v Salmon,* 249 NY 458; *Matter of Parkinson,* 134 Misc 2d 565; *Matter of Menzie,* 54 Misc 188; *Matter of Massimino,* 143 Misc 119; *Continental Ins. Co. v Col-*

*angione,* 94 AD2d 916; *Julien J. Studley, Inc. v Lefrak,* 66 AD2d 208, 48 NY2d 954; *Weiner v Greyhound Bus Lines,* 55 AD2d 189; *Lipkind v Ward,* 256 App Div 74; *Palmer v Hussey,* 87 NY 303, 119 US 96.) II. The bank and the majority opinion of the Appellate Division render SCPA 2210 (7) meaningless. (*Matter of Parkinson,* 134 Misc 2d 565; *Matter of Ziegler,* 161 Misc 2d 203; *Fisher v Banta,* 66 NY 468.) III. The majority opinion contains certain holdings which find no support in any statute or case law. (*Matter of Ziegler,* 161 Misc 2d 203; *O'Brien v City of Syracuse,* 54 NY2d 353; *Matter of Reilly v Reid,* 45 NY2d 24; *Meinhard v Salmon,* 249 NY 458; *Matter of Leland,* 219 NY 387; *Matter of Shaw,* 186 AD2d 809; *Matter of Marsh,* 179 AD2d 578.) IV. In the prior accounting proceedings Pamela Creighton did not have the opportunity to be heard on her present objections. (*Matter of Alker,* 20 AD2d 894; *Matter of Long Is. Loan & Trust Co. [Garretson],* 92 App Div 1, 179 NY 520; *Matter of Donner,* 82 NY2d 574; *Bank of N.Y. v New Jersey Tit. Guar. & Trust Co.,* 256 App Div 609, 257 App Div 806; *Matter of Brunner,* 49 Misc 2d 139, 26 AD2d 838; *Matter of Connors,* 36 Misc 2d 866.) V. SCPA 2210 (10) does not protect the bank (as the paragraph EIGHTH [B] trustee), for its failure to act with respect to either the 1977 or the 1981 accountings. (*Fisher v Banta,* 66 NY 468; *Matter of Ziegler,* 157 Misc 2d 423.) VI. Neither the 1977 executorial nor the 1981 paragraph EIGHTH (A) decree bars the paragraph EIGHTH (B) objections pursuant to the doctrine of res judicata. (*Molino v County of Putnam,* 29 NY2d 44; *Matter of Juan C. v Cortines,* 89 NY2d 659.) VII. The fact that the bank was acting in a dual capacity did not relieve it of its fiduciary duties as the paragraph EIGHTH (B) trustee. (*Meinhard v Salmon,* 249 NY 458; *Matter of Kistler,* 167 Misc 528; *Macy v Williams,* 55 Hun 489, 125 NY 767; *Bank of N.Y. v New Jersey Tit. Guar. & Trust Co.,* 256 App Div 609, 257 App Div 806; *Villard v Villard,* 219 NY 482; *Matter of Chalmers,* 163 Misc 142; *Matter of Brunner,* 49 Misc 2d 139, 26 AD2d 838.) VIII. Any attempt to graft an exculpatory provision on SCPA 2210 (10) where none exists should be rejected by this Court. (*New Amsterdam Cas. Co. v Stecker,* 3 NY2d 1; *Matter of Patrolmen's Benevolent Assn. of City of Buffalo v City of Buffalo,* 50 AD2d 101; *Matter of Parkinson,* 134 Misc 2d 565; *Matter of Massimino,* 143 Misc 119.) IX. The Appellate Division dissent's adoption of the *Pepper* rule (*Pepper v Zions First Natl. Bank, N.A.,* 801 P2d 144 [Utah 1990]) should be adopted by the Court of Appeals. (*Bank of N.Y. v New Jersey Tit. Guar. & Trust Co.,* 256 App Div 609; *Matter of Menzie,* 54 Misc 188; *Matter of Chaves,* 143 Misc 868;

*Rosner v Paley*, 116 Misc 2d 454, 99 AD2d 1018, 65 NY2d 736; *Matter of Rothko*, 43 NY2d 305; *Matter of Connors*, 36 Misc 2d 866.) X. The bank has never adequately disclosed the violations of its fiduciary duties to the trust beneficiary. (*Matter of Seaman*, 275 App Div 484, 300 NY 756; *Matter of Ziegler*, 161 Misc 2d 203, 213 AD2d 280, 86 NY2d 712; *Matter of Rudin*, 292 AD2d 283; *Matter of Zilkha*, 174 AD2d 331.) XI. The Court of Appeals should reverse the order below.

*Harris Beach LLP*, Pittsford (*Paul J. Yesawich, III*, and *Gregory J. McDonald* of counsel), and *Ruskin Moscou Faltischek, P.C.*, Uniondale (*C. Raymond Radigan* of counsel), for respondent. I. The Second Department's holding is in accord with more than 125 years of New York decisional and statutory law. (*Fisher v Hubbell*, 65 Barb 74, *affd sub nom. Fisher v Banta*, 66 NY 468; *Mullane v Central Hanover Trust Co.*, 339 US 306; *Pray v Hegeman*, 98 NY 351; *Globe & Rutgers Fire Ins. Co. v Hines*, 273 F 774, 257 US 643; *Matter of Haigh*, 125 Misc 365; *Matter of Busto*, 173 Misc 25, 258 App Div 980; *Krimsky v Lombardi*, 78 Misc 2d 685, 51 AD2d 600; *Matter of Zaharis*, 148 AD2d 868; *Matter of Weir*, 182 Misc 845.) II. Objectant's argument regarding SCPA 2210 (7) is meritless. (*Matter of Ziegler*, 157 Misc 2d 423.) III. Objectant's reliance on SCPA 1506 is misplaced and, in fact, confirms the Second Department's interpretation and application of SCPA 2210 (10). (*Fisher v Hubbell*, 65 Barb 74, *affd sub nom. Fisher v Banta*, 66 NY 468; *Matter of Menzie*, 54 Misc 188; *Matter of Chaves*, 143 Misc 868, 239 App Div 900; *Matter of Massimino*, 143 Misc 119.) IV. The result under SCPA 2210 (10) is consistent with the doctrines of res judicata and collateral estoppel as the Second Department clearly stated. (*O'Brien v City of Syracuse*, 54 NY2d 353; *Matter of Ziegler*, 161 Misc 2d 203; *Buechel v Bain*, 97 NY2d 295, 535 US 1096; *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65; *Gramatan House Invs. Corp. v Lopez*, 46 NY2d 481; *Matter of Chaves*, 143 Misc 868; *Matter of Massimino*, 143 Misc 119.) V. Objectant's remaining arguments are equally meritless and should be rejected by the Court. (*Matter of Connors*, 36 Misc 2d 866; *Matter of Brunner*, 49 Misc 2d 139, 26 AD2d 838; *Matter of Donner*, 82 NY2d 574; *Matter of Chaves*, 143 Misc 868, 239 App Div 900; *Matter of Menzie*, 54 Misc 188; *Matter of Ziegler*, 161 Misc 2d 203; *Matter of Chapin*, 171 Misc 783; *Matter of Van Deusen*, 24 Misc 2d 611; *Matter of Long Is. Loan & Trust Co. [Garretson]*, 92 App Div 1, 179 NY 520; *Matter of Alker*, 20 AD2d 894.)

*Eliot Spitzer, Attorney General*, New York City (*Robert R. Molic*

and *Gerald A. Rosenberg* of counsel), in his statutory capacity under EPTL 8-14.

*Sidley Austin Brown & Wood LLP,* New York City (*Eileen Caulfield Schwab, Roger J. Hawke, Darcy M. Katris* and *Kimberly A. Johns* of counsel), and *Roberta Kotkin* for New York Bankers Association, amicus curiae. I. The Appellate Division correctly held that appellant's objections are barred. II. The decision of the Appellate Division accords with precedent. III. SCPA 2210 (7) imposes no duty upon a successor fiduciary to object to the conduct of a predecessor fiduciary. (*Matter of Killan,* 172 NY 547; *Matter of Altman,* 115 Misc 476.) IV. A successor fiduciary does not have a duty to object to its own conduct as predecessor. (*Bank of N.Y. v New Jersey Tit. Guar. & Trust Co.,* 256 App Div 609; *Villard v Villard,* 219 NY 482; *Matter of Brunner,* 49 Misc 2d 139, 26 AD2d 838; *Matter of Chalmers,* 163 Misc 142; *Matter of Kistler,* 167 Misc 528; *Meinhard v Salmon,* 249 NY 458; *City Bank Farmers Trust Co. v Cannon,* 291 NY 125; *Matter of Van Deusen,* 37 AD2d 131.) V. *Pepper v Zions First Natl. Bank, N.A.* (801 P2d 144 [Utah 1990]) does not apply. (*Matter of Chaves,* 143 Misc 868, 239 App Div 900; *Matter of Menzie,* 54 Misc 188; *Matter of Alker,* 20 AD2d 894; *Matter of Schmidt,* 163 Misc 610; *Matter of Ziegler,* 161 Misc 2d 203; *Matter of Chapin,* 171 Misc 783.) VI. The purpose of SCPA 2210 (10) is to avoid placing a successor fiduciary in a position of divided loyalty. (*Matter of Parkinson,* 134 Misc 2d 565; *Fisher v Banta,* 66 NY 468; *Matter of Ziegler,* 157 Misc 2d 423; *Matter of Massimino,* 143 Misc 119; *Matter of Hernandez v Barrios-Paoli,* 93 NY2d 781; *Matter of Stevens v Wing,* 293 AD2d 49.)

**OPINION OF THE COURT**

GRAFFEO, J.

In this case we are required to decide whether the doctrine of res judicata applies to judicial proceedings settling an estate and a trust accounting, submitted by a bank that acted both as executor and as trustee. Under the facts and circumstances presented here, we conclude that the beneficiary of a separate testamentary trust managed by the same bank is precluded from raising objections to the fiduciary's actions that could have been raised in prior proceedings.

## I. Background

This case arises following more than 20 years of fiduciary involvement with the assets of the estate of Rochester resident

Blanche Hunter, who died in 1972 leaving a gross estate in excess of $28 million. A substantial portion of Hunter's estate consisted of common stock of the Eastman Kodak Company. Paragraph EIGHTH (A) of Hunter's will established a residuary trust for the benefit of her granddaughter Alice F. Creighton, and paragraph EIGHTH (B) created a residuary trust for the benefit of another granddaughter, the objectant Pamela Townley Creighton. Both granddaughters were minors at the time of Hunter's death. Each trust was to be funded with one half of the residuary estate, and in the event either granddaughter died without issue or without having exercised the power of appointment, the balance of that trust would pour over into the other trust. Hunter's will designated Lincoln Rochester Trust Company, petitioner Chase Manhattan Bank's predecessor, as coexecutor of the estate with James W. Cook, a trust officer. Hunter also selected the Bank and Cook to serve as the cotrustees of Trusts A and B.

The will was admitted to probate in January 1973. In March, the Bank and Cook partially funded each of the granddaughters' trusts with a cash distribution of over $40,000 from the estate. Between 1973 and the conclusion of the estate's administration in 1977, the Bank and Cook periodically transferred Kodak stock to the trusts, so that each trust eventually held about 13,000 shares. From late 1972 to 1977 the price of Kodak stock apparently dropped from $148 to $70 per share, resulting in a decline in aggregate value of the trusts' stock of over $2 million.

As coexecutors of Hunter's estate, the Bank and Cook commenced a proceeding seeking judicial settlement of the estate account in 1976. Having been served with notification of the accounting, Pamela Creighton, the beneficiary of Trust B, appeared through counsel and filed objections to the amount of attorneys' fees sought by the Bank but raised no other concerns about the management of estate assets. Surrogate's Court settled the account in a 1977 decree, which provided that "the said Executors be and hereby are released from all further liability and responsibility as such Executors as to all matters embraced in their Account and this Decree."

Alice Creighton, the beneficiary of Trust A, died in 1980 without issue and never having exercised her power of appointment. Under the terms of Hunter's will, Alice's assets, including 13,000 shares of Kodak stock, were transferred to Pamela's trust—Trust B. In July 1981, the Bank and Cook sought to judicially settle their account as cotrustees of Trust A. The co-

trustees again served the petition on Pamela. Rather than appearing in the proceeding, Pamela executed a waiver and did not file any objections to the account. In 1981, Surrogate's Court issued a decree settling the account and discharging the cotrustees "from all further liability and responsibility as such Trustees as to all matters embraced in their Account and this Decree."

After Cook died in 1996, the Bank initiated a judicial accounting of Trust B, covering the years 1973-1996. A Bank representative met with Pamela in California to deliver a copy of the account and to obtain a waiver of citation if she found the account satisfactory. Before reviewing the account documents, Pamela signed the waiver. Upon obtaining the waiver, Surrogate's Court settled the account in 1998. Pamela later consulted an attorney and commenced a proceeding to withdraw her waiver and vacate the 1998 decree, seeking to file objections to the account. After conducting a fact-finding hearing, Surrogate's Court determined that "the waiver was not knowingly and intelligently given," set aside the waiver and vacated the decree (190 Misc 2d 593, 600 [2002]). The Bank did not appeal this decision.

Pamela then filed objections to the account of Trust B, including the claims now under review. As relevant here, her objections fell into three categories, but all pertain to the Bank's conduct in its capacity as trustee of Trust B. First, she claimed that the Bank acted improperly by failing to diversify the high concentration of Trust B assets in Kodak stock. Second, Pamela contended that the Bank breached its duty to challenge its actions as executor in failing to diversify the stockholdings in Hunter's estate and in not timely funding the trusts. Third, Pamela asserted that the Bank breached its duty to object to its actions as trustee of Trust A in failing to diversify the stockholdings of Trust A.

The Bank moved to dismiss the second and third categories of objections (i.e., allegations against the Bank, as trustee of Trust B, for its failure to object to the estate and Trust A accountings). The Bank argued that Pamela's failure to object in the 1977 and 1981 judicial accounting proceedings precluded these claims under the doctrine of res judicata.

Surrogate's Court denied the Bank's motion to dismiss the second and third categories of objections. The court rejected the Bank's argument that those objections were barred by res judicata, concluding that the Bank's "actions as cotrustee of the

EIGHTH (B) Trust were not subject to judicial scrutiny in either of those two proceedings" (194 Misc 2d 364, 370 [2002]).

Pamela Creighton died in 2002 and the administrators of her estate as well as the beneficiaries of her trust were substituted as the objectants.[1] Thereafter, the Appellate Division, with one Justice dissenting, modified the Surrogate's order, by granting the Bank's motion to dismiss the second and third categories of objections (6 AD3d 117 [2d Dept 2004]). The majority held that Pamela's opportunity to raise objections to the Bank's alleged mismanagement as executor and trustee of Trust A in the 1977 and 1981 proceedings precluded her present objections to the Bank's failure as trustee of Trust B to contest the prior accountings under the doctrine of res judicata. The Appellate Division granted leave to appeal to this Court, certifying the following question: "Was the opinion and order of this court dated March 29, 2004, properly made?" We answer in the affirmative.

## II. Surrogate's Court Procedure Act

Under article 22 of the Surrogate's Court Procedure Act, fiduciaries such as executors and trustees have an obligation to account for their actions. Executors ordinarily account at the conclusion of estate administration while trustees account "when the trust is terminated or when they cease to serve" (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2205, at 18). Although the SCPA does not require a fiduciary to give periodic or intermediate accountings, where trusts are managed over a lengthy period trustees often account periodically.[2]

A fiduciary may voluntarily proceed to obtain formal judicial settlement of an account under SCPA 2208.[3] Additionally, certain persons, including beneficiaries under a will or trust,

---

**1.** Judith Chinello and Stan Mandell, the administrators of Pamela's estate, as well as Margaret Hunter and Pomona College, the appointees of the trust corpus, are now the objectants. For purposes of this opinion, the term objectants refers to the substituted parties.

**2.** Despite the fact that the SCPA does not require the preparation of periodic or intermediate accountings by trustees, one commentator has indicated that such accountings are customary every 10 years (see Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2205, at 18).

**3.** A fiduciary may also account informally by obtaining receipts and releases from interested parties regarding the handling of the estate or trust (see 6 Warren's Heaton, Surrogates' Courts § 91.04 [3], at 91-17 [6th ed rev]; Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2202, at 7). The SCPA permits a fiduciary to file and record the receipt

may initiate a proceeding to compel a formal accounting (*see* SCPA 2205). The court may also compel a judicial accounting on its own initiative (*see* SCPA 2205).

Judicial settlement serves the interests of both the fiduciary and the beneficiary in that it provides full disclosure of the fiduciary's financial transactions and, upon issuance of a decree, the fiduciary is released from liability for those transactions (*see* 6 Warren's Heaton, Surrogates' Courts § 91.02 [1], at 91-4 [6th ed rev]). Where a fiduciary commences a judicial accounting and accounts to a trustee, it is generally not necessary to serve process on the beneficiaries of that trust because the trustee represents the beneficiaries' interests (*see* SCPA 2210 [7]). But SCPA 2210 (10) provides an exception to this rule for a fiduciary who simultaneously fulfills more than one role:

> "[w]here an accounting fiduciary accounts to himself in a separate capacity as the fiduciary of a deceased beneficiary of the estate, or as trustee . . . process shall issue to all persons interested in the estate of the deceased beneficiary, . . . or the trust of which the accounting party is trustee."

Thus, under the statute, if the fiduciary seeking to account also serves as a trustee, the fiduciary must notify trust beneficiaries directly of any accounting proceeding.[4]

Long before the enactment of SCPA 2210 (10), this Court addressed the significance of notification to beneficiaries in accounting proceedings involving multicapacity fiduciaries. In *Fisher v Banta* (66 NY 468 [1876]), this Court held that, where a fiduciary seeks to account to itself in another capacity, an accounting decree will be conclusive only where persons ordinarily represented by the fiduciary in its alternate capacity "have been made parties to the accounting" (*id.* at 482). The *Fisher* multicapacity fiduciary rule was codified in SCPA 2210 (10), recognizing that an accounting fiduciary may not account to itself in a separate capacity absent the intervention of the beneficiaries. Thus, SCPA 2210 (10) performs a dual purpose: it requires multicapacity fiduciaries to give beneficiaries notice of

and release agreements with Surrogate's Court (*see* SCPA 2202) and authorizes Surrogate's Court to issue a decree based on these filed agreements (*see* SCPA 2203).

4. Notice to beneficiaries is not required by SCPA "where the accounting fiduciary has in said separate capacity one or more co-fiduciaries who are not his co-fiduciaries in his accounting capacity" (SCPA 2210 [10]). This provision is not applicable here.

the opportunity to raise objections to an accounting and, as a result of account settlement, fiduciaries obtain finality with respect to their actions.

## III. Analysis

Objectants argue that the notice and opportunity to be heard provided in the 1977 and 1981 proceedings do not preclude the current objections because they concern only the Bank's conduct as trustee of Trust B and not its conduct as executor of Hunter's estate or as trustee of Trust A.[5] The Bank counters that objectants' claims are actually directed at its failure to diversify stockholdings and are in effect no different than the claims Pamela could have raised in the prior proceedings.

Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation. The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again (see *O'Connell v Corcoran*, 1 NY3d 179, 184-185 [2003]; *Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481, 485 [1979]). Additionally, under New York's transactional analysis approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981], citing *Matter of Reilly v Reid*, 45 NY2d 24, 29-30 [1978]). "*Res judicata* is designed to provide finality in the resolution of disputes," recognizing that "[c]onsiderations of judicial economy as well as

5. The Attorney General, appearing in this case as a necessary party under article 8 of the Estates, Powers and Trusts Law due to the charitable interests implicated by Pomona College's remainder beneficiary status in Trust B, generally agrees with objectants' position. The Attorney General contends that "an accounting multicapacity fiduciary should, where applicable, disclose to the beneficiaries to whom it is accounting to that it has a conflict because of its dual capacity and should explain the potential issues that might arise because of that conflict." While we concur that such a disclosure would be helpful, the SCPA contains no such requirement. The Attorney General also states that the Bank's 1977 and 1981 accounts are not models of clarity. Although these accounts could have set forth more clearly the information relating to the transfer and value of assets for the benefit of lay beneficiaries, we note that the accounts do contain the relevant information relating to the Kodak stock transactions.

fairness to the parties mandate, at some point, an end to litigation" (*Reilly*, 45 NY2d at 28).

These principles apply with equal force to judicially settled accounting decrees. As a general rule, an accounting decree is conclusive and binding with respect to all issues raised and as against all persons over whom Surrogate's Court obtained jurisdiction (*see Pray v Hegeman*, 98 NY 351, 358 [1885]; *Matter of Ziegler*, 161 Misc 2d 203, 205 [Sur Ct, NY County 1994], *affd* 213 AD2d 280 [1995], *lv denied* 86 NY2d 712 [1995]). Indeed this principle is so well settled that the drafters of the SCPA determined that it was unnecessary to include former section 274 of the Surrogate's Court Act which had codified this rule, noting that it was " 'self-evident . . . that every decree whether upon an accounting or otherwise is binding upon all persons of whom jurisdiction was obtained' " (*Ziegler*, 161 Misc 2d at 205, quoting Revisers' Notes, McKinney's Cons Laws of NY, Book 58A, SCPA 2226 [now 2227], at 292 [1967 ed]; *see also* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 2227, at 269). In accord with res judicata, an accounting decree is therefore conclusive as to issues that were decided as well as those that could have been raised in the accounting (*see Matter of Roche*, 259 NY 458, 461 [1932]; *Pray*, 98 NY at 358).

Applying the foregoing principles to this case, we agree with the Appellate Division that objectants are precluded from litigating the claims involving the Bank's failure, in its capacity as trustee of Trust B, to object to its own voluntary accountings as executor of Hunter's estate or as trustee of Trust A. The Bank complied with its obligation under SCPA 2210 (10) to notify Pamela of the 1977 proceeding to judicially settle the estate account. Represented by counsel in that proceeding, Pamela appeared but objected only to the attorneys' fees, never challenging the fiduciaries' management of estate assets. Similarly, in the 1981 accounting to settle Alice's trust (Trust A), the Bank served Pamela with process but she chose to execute a waiver of citation and did not file any objections.

The claims objectants now seek to assert were discernible from the documents filed in these prior proceedings. The 1977 account disclosed the dates when the trusts were funded with Kodak stock and the decline in the value of the stock was apparent in the 1977 and 1981 accountings—indeed, objectants rely on those documents to support their present objections. Pamela therefore had a full and fair opportunity to raise objec-

tions relating to the Bank's obligations as executor to diversify the stock or timely fund the trusts, or as trustee of Trust A to diversify the trust assets—the crux of the present objections.

We are not persuaded by the distinction objectants attempt to draw between objections relating directly to the Bank's activities as executor and trustee of Trust A and the objections regarding the Bank's duties, as trustee of Trust B, to object to its own prior accountings on Pamela's behalf. There can be no doubt that under either formulation, the wrongful conduct objectants seek to redress pertains to the Bank's alleged mismanagement of the estate and Trust A. Moreover, adoption of this argument would negate a fundamental objective of SCPA 2210 (10)—to ensure finality for multicapacity fiduciaries who comply with notice requirements. Nothing in the SCPA provides beneficiaries with a "second bite of the apple" where they have been afforded the opportunity to litigate the essence of their objections in a prior judicial settlement proceeding.[6] Put simply, "[i]f a fiduciary gives full disclosure in his accounting, to which the beneficiaries are parties . . . they should have to object at that time or be barred from doing so after the settlement of the account" (Turano, 2003 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 58A, SCPA 1506, 2005 Pocket Part, at 66).

Finally, we note that Pamela's opportunities to raise objections regarding the estate and Trust A accounts do not bar objectants from continuing to litigate their claims with respect to the Bank's management of Trust B (objections numbered 1, 2 and 3 in this proceeding).

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur.

Order affirmed, etc.

---

6. Under certain circumstances—for example, where a fiduciary procures a release waiving citation or a decree settling an account through fraud—a beneficiary may move to set aside the prior decree (see Matter of Frutiger, 29 NY2d 143, 149-150 [1971]; Matter of Zahoudanis, 289 AD2d 412 [2d Dept 2001]).