In the Matter of the Trusts Made by BETH H. LIFGREN and Another. WILBER NATIONAL BANK, as Trustee of the Trusts Made by BETH H. LIFGREN and Another, Respondent; TERRY D. LIFGREN, Respondent, and SHERYLE LIFGREN CHARITY et al., Appellants. (And Another Related Proceeding.) [827 NYS2d 753]—

Cardona, P.J. Appeal from that part of an order of the Surrogate's Court of Otsego County (Becker, S.), entered September 15, 2005, which, upon reargument, partially denied an accounting of a certain trust.

This appeal involves a challenge to the release and informal accounting of the estate of Derwood K. Lifgren (hereinafter decedent) and the qualified terminable interest property trust (hereinafter QTIP trust) created under his will. Decedent executed a will in 1993 which directed that his shares of Astrocom Electronics, Inc. stock, a closely held company of which decedent was chair and sole stockholder, be transferred at the time of his death to a trust to provide income for his wife during her

lifetime. Decedent's will further provided that the trust should terminate upon his wife's death and the corpus be divided among his five children per stirpes. In addition, the will directed that the stock be retained in the trust for as long as "the [t]rustees shall deem advisable," and in the event the stock failed to produce adequate income, the trustees were authorized to sell the stock "to any person or persons including [his] son, Terry D. Lifgren." The will appointed petitioner, attorney Henry L. Hulbert and respondent Terry D. Lifgren (hereinafter collectively referred to as the trustees) as coexecutors of the estate and cotrustees of any trust created under the provisions of the will.

After decedent's death in 1996, the trustees elected to set up a QTIP trust to receive the Astrocom stock as directed in the will. A year later in November 1997, the trustees sent letters to decedent's children as the beneficiaries of the estate informing them of the disposition of the estate and matters to be resolved. Included among those matters was the status of the Astrocom stock that was designated to fund the QTIP trust. Terry Lifgren (hereinafter Lifgren), who succeeded decedent as president and chair of Astrocom, offered to purchase the stock from decedent's estate at a discounted rate of $1.2 million, as opposed to the appraised value of $1.6 million. The letter sought the beneficiaries' input as to whether they supported or opposed that offer. With no objection, Lifgren purchased the stock from decedent's estate and the $1.2 million in proceeds were deposited into the QTIP trust. By 2000, the trustees sought to be discharged from their duties with respect to the estate matters, including those in connection with the QTIP trust, and provided an informal accounting and release to the beneficiaries. A release with an attached informal accounting of decedent's estate through June 26, 2000 was signed by decedent's wife and the beneficiaries.

Petitioner, which was appointed trustee of certain separate inter vivos trusts created by decedent and his wife, commenced this proceeding pursuant to SCPA 2107 seeking advice and direction regarding certain assets in those trusts. Respondents Sheryle Lifgren Charity, Bettina Lifgren Bell, Christine Lifgren, Tommas Lifgren, Michael Bell, Jacqueline Bell and Kisha Lifgren (hereinafter collectively referred to as respondents), as income beneficiaries of those trusts, answered and cross-petitioned for, among other things, a full accounting of the QTIP trust. Surrogate's Court denied that accounting request. Upon respondents' motion to reargue, the court modified its prior order by partially granting respondents' request for an accounting of the QTIP trust from June 27, 2000, the day after the period

covered by the informal accounting and release in connection with decedent's estate. This appeal by respondents ensued.

Respondents claim that the trustees failed to disclose material facts surrounding the sale of the Astrocom stock and, therefore, the release should be set aside. Specifically, they contend that the trustees breached their fiduciary duty when they engaged in self-dealing by allowing Lifgren to purchase the Astrocom stock from decedent's estate, instead of, as directed in the will, purchasing it from the QTIP trust.

It is well settled that a fiduciary, as an executor or trustee, is obligated to account for his or her decisions and actions in administering an estate or trust (*see generally* SCPA art 22; *see also Matter of Hunter*, 4 NY3d 260, 267 [2005]). While formal accountings of an estate are done in the context of a judicial proceeding, "[a] fiduciary may also account informally by obtaining receipts and releases from interested parties regarding the handling of the estate or trust" (*Matter of Hunter, supra* at 267 n 3). "[S]uch an informal accounting is as effectual for all purposes as a settlement pursuant to a judicial decree" (*Matter of LeoGrande*, 13 Misc 3d 1070, 1076 [2006] [internal quotation marks and citation omitted]; *see generally Matter of Wagner*, 119 NY 28, 34-35 [1890]). "[I]f a fiduciary gives full disclosure in his [or her] accounting, to which the beneficiaries are parties . . . they should have to object at that time or be barred from doing so after the settlement of the account" (*Matter of Hunter, supra* at 271 [internal quotation marks and citation omitted]). Where the validity of a release is challenged, "the fiduciary must affirmatively demonstrate that the beneficiaries were made aware of the nature and legal effect of the transaction in all its particulars" (*Matter of Birnbaum v Birnbaum*, 117 AD2d 409, 416 [1986]).

Here, the trustees' November 1997 letter to respondents clearly stated that keeping Astrocom stock as the corpus of the QTIP trust was "not a satisfactory long-term solution . . . for the beneficiaries of the estate" and that it would be "far more appropriate to sell the business, and reinvest the proceeds within the [QTIP] trust to produce current income for [decedent's wife]." The letter went on to explain that Lifgren made an offer to buy the Astrocom stock for $1.2 million and set forth the manner in which he proposed to purchase such stock. While the letter discussed various alternatives and costs associated therewith, it advised that the stock purchase by Lifgren at the discounted price was "in the best interest of the estate and the estate's beneficiaries" and more in line with the testamentary intent of decedent. Although given the opportunity to do so, no

beneficiary objected to the proposed stock sale. The sale of the stock to Lifgren was completed the following month for $1.2 million.

Three years later, in July 2000, respondents signed a release in connection with the administration of the estate which stated that the Astrocom stock "was sold in accordance with the provisions of the [w]ill and the proceeds were distributed to the QTIP [t]rust beneficiary of the stock." It further stated that the sale was necessary due to the decline in business and "[t]he beneficiary of the QTIP [t]rust, decedent's spouse, wanted the [t]rust to be income producing." Inasmuch as the record establishes that the nature and circumstances surrounding the sale of the stock were fully disclosed by the trustees, we find no reason to disturb the decision of Surrogate's Court.

Mercure, Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, with one bill of costs.