(June 13, 2017)

◼ NATIONWIDE MUTUAL INSURANCE COMPANY, as Subrogee of Artimus Construction Corp., Inc., et al., Appellants, v U.S. UNDERWRITERS INSURANCE COMPANY, Respondent. [59 NYS3d 1]—

Order, Supreme Court, New York County (Robert R. Reed, J.), entered November 19, 2015, which granted defendant's motion to dismiss the complaint, affirmed, without costs.

Our dissenting colleague has accurately related the facts of this case and the general principles of collateral estoppel and res judicata, and they need not be repeated here. We differ only in how those principles apply to the facts of this case.

There is no dispute that plaintiff Artimus is the subrogee of nonparty Armadillo's rights and thus is in privity with Armadillo. As the subrogee of Artimus, plaintiff Nationwide is in privity with Artimus. Neither Artimus nor Nationwide can have any greater rights than their subrogors possessed. It is therefore appropriate at this point to review the legal concepts of subrogation and privity.

"Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654, 660 [1997]). "The insurer's rights against a third party are derivative and limited to the rights the insured would have against that third party" (*Westport Ins. Co. v Altertec Energy Conservation, LLC*, 82 AD3d 1207, 1209 [2d Dept 2011], citing *Humbach v Goldstein*, 229 AD2d 64, 67 [2d Dept 1997]). "Therefore, '[an] insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured' " (*id.*, quoting *Humbach* at 67).

"Privity, it has been observed, is an amorphous concept not easy of application. Generally, a nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation" (*D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990] [citation omitted]).

Artimus, as subrogee of Armadillo, and Nationwide, as Artimus's subrogee, are therefore subject to whatever rules of collateral estoppel would be applicable to Armadillo.

The motion court correctly determined that the insurance coverage issues involved in this case were decided in Nationwide's prior action. The parties were the same in both cases and had a full and fair opportunity to be heard on the coverage issues. The doctrine of res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]). We agree with the dissent that a "transactional analysis" is to be used in analyzing the appropriateness of applying the doctrine of res judicata. This approach has been stated as follows: " '[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories

or if seeking a different remedy' " (*id.*, quoting *O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]).

The issues raised here were addressed in the prior action. The court in that action held that U.S. Underwriters had no obligation to provide insurance coverage in the personal injury action because the employer liability exclusion provision in its policy was applicable. In fact, documentary evidence establishes that plaintiffs in this case had a full and fair opportunity to litigate this issue in the prior action, where Nationwide's subrogor, Artimus, was a plaintiff, and Artimus' subrogor, Armadillo, was a named defendant. U.S. Underwriters served its pre-answer motion on Nationwide, Artimus and Armadillo. Nationwide and Artimus submitted opposition; Armadillo chose not to appear or oppose the motion. Neither Nationwide nor Artimus appealed from the prior order. Under New York's transactional approach, any claims Armadillo had could have, and should have, been brought at that time (*Matter of Hunter*, 4 NY3d at 269). Indeed, a "party to a lawsuit cannot sit by idly while a contract, to which [it] is also a party, is judicially construed without being precluded by the result" (*see Buechel v Bain*, 97 NY2d 295, 305 [2001], *cert denied* 535 US 1096 [2002]). To do so would be to reward a defaulting party for its inaction.

*Cicero v Great Am. Ins. Co.* (53 AD3d 461 [1st Dept 2008], *lv dismissed in part and denied in part*, 11 NY3d 912 [2009]) is not to the contrary. In *Cicero*, the prior declaratory judgment action did not involve coverage issues raised in that action. We determined that coverage was not the same issue as in the prior action, which involved a question of timely notice. Here, by contrast, the issues involved both claims of untimely notice and whether the underlying personal injury action within a policy exclusion.

Thus, in this case, the parties were afforded a full and fair opportunity to litigate the insurance coverage issues in the prior action. Nationwide is therefore collaterally estopped from litigating the same issues already decided against its subrogor, Artimus, who in turn is estopped from litigating the same issues decided against its subrogor, Armadillo, as a subrogee of the insured.

Moreover, the principles of res judicata favor defendants herein. Nationwide and Artimus seek to enforce the judgment that they were awarded against Armadillo in the third-party personal injury action. However, as noted above, in the prior action the court found that the coverage exclusion with respect to the personal injury action in U.S. Underwriters policy was

applicable. By bringing this action as subrogees of Artimus and Armadillo under Insurance Law § 3420, Nationwide and Artimus are essentially seeking to relitigate Artimus's claims for coverage. "Res judicata is designed to provide finality in the resolution of disputes, recognizing that [c]onsiderations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation" (*Matter of Hunter*, 4 NY3d at 269-270 [internal quotation marks and emphasis omitted]; *Buechel v Bain*, 97 NY2d at 303; *B. R. DeWitt, Inc. v Hall*, 19 NY2d 141, 144 [1967]). Concur—Sweeny, Moskowitz, Kapnick and Kahn, JJ.

Acosta, P.J., dissents in a memorandum as follows: I would deny defendant's motion to dismiss, and reinstate the complaint. Plaintiffs, Nationwide Mutual Insurance Company (as subrogee of Artimus Construction Corp., Inc.) and Artimus Construction Corp., Inc. (as subrogee of Armadillo Construction Corp.), appeal from an order of the Supreme Court, New York County (Robert R. Reed, J.), entered November 19, 2015, to the extent it granted defendant U.S. Underwriters Insurance Company's CPLR 3211 motion to dismiss the complaint as barred by collateral estoppel and res judicata.

On or about July 9, 2001, Kerwin Park, an employee of Armadillo Construction Corp., a demolition contractor, sustained personal injuries while working on a construction site. Park commenced the underlying Labor Law action against the general contractor (Artimus) and others.

Nationwide, Artimus's insurer, tendered the defense of the action to Armadillo and Armadillo's insurer, U.S. Underwriters; Artimus was an additional insured on the U.S. Underwriters policy. By letter dated August 31, 2001, U.S. Underwriters denied coverage to Artimus, copying the broker and Armadillo on the letter, based on late notice of occurrence and various exclusions in the policy.

Nationwide and Artimus then commenced a declaratory judgment action against U.S. Underwriters and Armadillo, seeking coverage from U.S. Underwriters for Artimus and indemnification from Armadillo. U.S. Underwriters issued a letter dated July 14, 2004 to Armadillo, stating that no coverage was available for Armadillo in the declaratory action, because the claims in the underlying personal injury action were not for bodily injury or property damage and were not a covered "occurrence" within the meaning of the policy, since they alleged conduct that was "intentional" in nature. Artimus also commenced a third-party action for indemnification against Armadillo in the underlying action.

U.S. Underwriters moved to dismiss the declaratory judgment action. The motion court (Cahn, J.) granted the motion, finding that U.S. Underwriters was relieved from providing coverage to Artimus because of (a) late notice of the claim by Artimus to U.S. Underwriters and (b) the policy's exclusion for employee injuries, i.e., injuries covered by the Workers' Compensation Law. Armadillo did not appear in the action. The court noted that, while "U.S. Underwriters is entitled to an order granting its motion to dismiss, it is not entitled to a declaration of its rights vis-a-vis plaintiffs and/or co-defendant Armadillo." In so doing, the court said that granting a declaratory judgment in U.S. Underwriter's favor would be "inappropriate at this juncture because [U.S.] Underwriters has not interposed an answer affirmatively seeking such relief." The action was severed and continued as to Armadillo.

In or about May 2011, the underlying action settled for approximately $1.55 million. Nationwide contributed to the settlement on Artimus's behalf. Artimus also obtained a default judgment on its third-party indemnification claim against Armadillo. On or about May 12, 2012, Artimus moved to restore its claims against Armadillo to the active calendar in the declaratory judgment action. In granting the motion, the court (Ramos, J.) cited to Justice Cahn's earlier decision in the action and observed that no decision had been made concerning Armadillo's entitlement to coverage. On or about November 21, 2013, the default judgment against Armadillo in the underlying action was referred to a special master for an inquest on damages; on July 16, 2014, judgment was entered against Armadillo, in Artimus's favor, in the amount of $987,051.60. On July 24, 2014, Artimus served the judgment on Armadillo, which did not respond. On October 23, 2014, Artimus forwarded the judgment to U.S. Underwriters for payment in accordance with Insurance Law § 3420 (a). On October 24, 2014, U.S. Underwriters, through counsel, acknowledged receipt of the judgment, but declined to pay, citing Justice Cahn's decision in Artimus's declaratory judgment action.

After 30 days, Nationwide and Artimus, as subrogees of Armadillo, commenced this action against U.S. Underwriters. U.S. Underwriters moved to dismiss, arguing, inter alia, that the doctrines of res judicata and collateral estoppel barred this action, based on Justice Cahn's order in the prior declaratory action. In opposition, Nationwide and Artimus argued that they could not be precluded from pursuing this action because the issue of Armadillo's coverage rights had never been adjudicated. They pointed out that Justice Cahn's order was

based on a pre-answer motion to dismiss and that there was no judgment entered in the lawsuit declaring or otherwise determining Armadillo's rights under the U.S. Underwriters policy.

Justice Reed granted U.S. Underwriters' motion to dismiss the complaint, concluding that Artimus, as Armadillo's subrogee, was collaterally estopped from bringing the instant action, because it was in privity with Armadillo, and whatever rules of collateral estoppel applied to Armadillo would also apply to Artimus (and its subrogee, Nationwide). The court found that as a consequence, Artimus was bound by Justice Cahn's order. The court also found that the action was barred by the doctrine of res judicata. I disagree.

Collateral estoppel, also referred to as issue preclusion, prevents a party, or one in privity with a party, from being able to relitigate an issue that has already been decided against it. For the doctrine to apply, (1) the issue had to have been necessarily decided in the prior action, and (2) the party to be precluded from re-litigating the issue must have had a full and fair opportunity to contest the prior determination, whether or not the causes of action are the same (*D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990]). A nonparty to a prior lawsuit may be collaterally estopped by a determination in that lawsuit if its relationship to a party in that lawsuit is such that its own rights or obligations in the subsequent proceeding are conditioned on or derivative of the rights of the party in the prior lawsuit (*id.* at 664).

Here, neither Artimus nor Armadillo had a full and fair opportunity to litigate the issue of whether Armadillo would be covered under the U.S. Underwriters policy. Armadillo's default in the declaratory judgment action means its rights were never fully adjudicated. To be sure, Armadillo did not appear in the proceeding. However, instead of granting a default, Justice Cahn stated that the issuance of any declaration concerning Armadillo's rights under the U.S. Underwriters policy was inappropriate because U.S. Underwriters had not interposed an answer affirmatively seeking that relief. In addition, when the court (Ramos, J.) restored the action to the calendar, it acknowleded that Armadillo's rights vis-à-vis the policy had not been adjudicated. Under these circumstances, I cannot rationally conclude that Armadillo had a full and fair opportunity to have its rights adjudicated (*see Zimmerman v Tower Ins. Co. of N.Y.*, 13 AD3d 137, 140 [1st Dept 2004]).

Second, even assuming that Armadillo's rights were adjudicated or a binding final determination was reached, the deter-

mination would only apply to Armadillo and its rights to coverage as an insured under the policy. Armadillo's rights are separate and distinct from the right of a claim by a judgment creditor (*Cicero v Great Am. Ins. Co.*, 53 AD3d 461 [1st Dept 2008], *lv dismissed in part and denied in part* 11 NY3d 912 [2009]).

This is not to say that plaintiffs will ultimately be successful in collecting on Artimus's judgment claim for indemnification. It may indeed be determined that the same employee injury exclusion that served, in part, to preclude coverage for Artimus may preclude coverage for Artimus's indemnification claim against Armadillo. Nonetheless, the indemnification claim is a separate claim, from the direct personal injury claim which must be adjudicated on its own merits, particularly because no party to the prior transaction sought to have its rights determined vis-à-vis Armadillo. The record should be more fully developed prior to a determination that the claims are one and the same.

In my opinion, there is also no basis for precluding this action on res judicata grounds. Res judicata, also referred to as claim preclusion, applies when a party to a prior action, or one in privity with a party, attempts to re-litigate a claim "where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]). The rule applies both to claims that were actually litigated and to claims that could have been raised in the prior litigation (*id.*). New York uses a transactional analysis approach to determine whether res judicata bars a claim. Under this analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based [on] different theories or if seeking a different remedy" (*id.* [internal quotation marks omitted]). For purposes of determining whether a claim is grounded in the same transaction, the crucial issue is whether the transaction arises out of the same factual grouping, which depends on how the facts are "related in time, space, origin, or motivation" (*Smith v Russell Sage Coll.*, 54 NY2d 185, 192-193 [1981] [internal quotation marks omitted]).

As noted above, the instant action involves a separate and distinct claim from the question of whether Artimus could recover as an additional insured under the U.S. Underwriters policy. The question is whether U.S. Underwriters must provide coverage for Armadillo's contractually mandated indemnification of Artimus. Moreover, on the issue of res judicata, it is

instructive to recall the precise posture of Artimus in this action. Artimus is an Insurance Law § 3420 judgment creditor that had no right to commence a direct action against U.S. Underwriters. *Lang v Hanover Ins. Co.* (3 NY3d 350, 352-353 [2004]) makes clear that "a judgment is a statutory condition precedent to a direct suit against [a] tortfeasor's insurer" and that "Insurance Law § 3420 precludes a direct action by an injured party against a tortfeasor's insurance company until a judgment has been secured against the tortfeasor and that judgment has been served on the insurance company but has remained unpaid for 30 days." Artimus could not have litigated these claims in the prior action in the absence of the condition precedent that was necessary to do so. Indeed, that Artimus had no right to commence a direct action against U.S. Underwriters may explain why neither U.S. Underwriters nor Artimus actively sought a declaration of rights in the prior action.