# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| INTREPID INVESTMENTS, LLC, directly and derivatively on behalf of SELLING SOURCE, LLC N/K/A SPEEDWELL HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12077-NAC |
| LONDON BAY CAPITAL, LLC, LONDON BAY FUND I, LLC, LONDON BAY - TSS ACQUISITION COMPANY, LLC, LONDON BAY - TSS HOLDING COMPANY, LLC, OLAYAN AMERICA CORPORATION, CREL INVESTMENTS LIMITED, CREL/OAC, LLC, KHL LIMITED, LONE STAR SPV I, LLC, LS HOLDINGS GROUP, LLC, LBCDLF, LLC, SELLING SOURCE INVESTMENT COMPANY, LLC, DEREK CRAIG LAFAVOR LIVING TRUST, DLF SERVICES, INC., WHITE OAK GLOBAL ADVISORS, LLC, WHITE OAK MERCHANT PARTNERS, LLC, WHITE OAK STRATEGIC MASTER FUND, L.P., FULL CIRCLE CAPITAL CORPORATION, SAM HUMPHREYS, ALTON IRBY, DOUGLAS TULLEY, MICHAEL LEVIN, DAVID KOSTMAN, GLENN MCKAY, DEREK LAFAVOR, and MICHAEL BRANT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SELLING SOURCE, LLC, | ) ) ) | |
| Nominal Defendant. | ) | |

**MEMORANDUM OPINION**

Date Submitted: March 9, 2023
Date Decided: June 21, 2023

C. Barr Flinn, James M. Yoch, Jr., M. Paige Valeski, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; *Counsel for Plaintiff Intrepid Investments, LLC*.

Brock E. Czeschin, Angela Lam, John M. O'Toole, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Defendants London Bay Capital, LLC, London Bay Fund I, LLC, London Bay - TSS Acquisition Company, LLC, London Bay - TSS Holding Company, LLC, Olayan America Corporation, CREL Investments Limited, CREL/OAC, LLC, KHL Limited, Lone Star SPV I, LLC, LS Holdings Group, LLC, LBCDLF, LLC, Selling Source Investment Company, LLC, Derek Craig LaFavor Living Trust, DLF Services, Inc., Sam Humphreys, Alton Irby, Douglas Tulley, Michael Levin, David Kostman, Glenn McKay, Derek LaFavor, and Michael Brant.*

Patricia L. Enerio, Aaron M. Nelson, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; John M. Lundin, Niall D. Ó Murchadha, Cynthia L. Botello, LUNDIN PLLC, New York, New York; *Counsel for Defendants White Oak Global Advisors, LLC, White Oak Merchant Partners, LLC, and White Oak Strategic Master Fund, LP*.

John A. Sensing, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Counsel for Defendant Full Circle Capital Corporation*.

**COOK, V.C.**

Intrepid Investments, LLC ("Intrepid") has sued numerous individuals and entities in this Court alleging that they engaged in a variety of transactions that harmed Intrepid. Separately, Intrepid sued many of these same defendants in New York (the "New York Action"). After many years of litigation in the state courts of New York, Intrepid's litigation there has now concluded. Intrepid was unsuccessful on all its claims brought in New York. The question addressed in this Memorandum Opinion is what effect the judgment rendered by the state courts of New York has on Intrepid's action in this Court. I conclude that certain of Intrepid's claims for fraudulent transfer brought under the Delaware Uniform Fraudulent Transfer Act ("DUFTA") are barred by the doctrine of res judicata.

## I. FACTUAL BACKGROUND[1]

This Memorandum Opinion solely addresses the implications of the decision in the New York Action. As such, the factual background is limited to background implicated by the New York Action. I do not address in detail the extensive factual background concerning the numerous transactions challenged by Intrepid.

---

[1] I draw the relevant facts from Intrepid's fourth amended complaint (the "Complaint"). In addition, a copy of the Second Amended and Restated Limited Liability Company Operating Agreement of Selling Source, LLC, dated August 31, 2010, was attached to the Transmittal Affidavit of John O'Toole, Esq. This exhibit is incorporated by reference into the Complaint. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

**A.** **Selling Source Acquires Certain Businesses From Intrepid**

On August 31, 2010, Selling Source, LLC ("Selling Source") and Intrepid entered into a Transaction and Purchase Agreement (the "Purchase Agreement") whereby Selling Source acquired Intrepid's lead generation business (the "Acquired Businesses").[2] In connection with the acquisition, the parties executed the Second Amended and Restated Limited Liability Company Operating Agreement of Selling Source (the "Operating Agreement").[3] Pursuant to the Purchase Agreement, Intrepid received the following in exchange for the sale of the Acquired Businesses: (a) rights to quarterly management fees from Selling Source pursuant to a management services agreement; (b) a $28.7 million promissory note issued by Selling Source and due on June 30, 2013 (the "Intrepid Note"); and (c) 42 million "Class B Units" of Selling Source, representing all of Selling Source's Class B Units and a 15% contingent minority equity interest in Selling Source subject to adjustment based on the Purchase Agreement's earn-out provisions.[4]

---

[2] Docket Index ("D.I.") 123 ("FAC") ¶¶ 1, 3.

[3] *Id.* ¶ 85.

[4] *Id.* ¶¶ 3, 4.

**B.      The New York Action**

Selling Source failed to repay the Intrepid Note on June 30, 2013.[5]   In December 2013, Intrepid filed suit in New York state court seeking recovery under the Intrepid Note.[6]   Intrepid brought eleven separate counts against numerous defendants.[7]   The New York Action was brought against Selling Source, London Bay – TSS Acquisition Company, LLC ("LBTSS"), and White Oak Global Advisors, LLC ("White Oak"), among others.   Intrepid sought to recover on the Intrepid Note, which was in default, and also sued White Oak for allegedly frustrating Intrepid's ability to obtain repayment of the Intrepid Note.[8]

On July 20, 2021, the New York Supreme Court issued its decision in the New York Action (the "New York Decision").[9]   As noted by the court, Intrepid had received a third priority lien on the assets of Selling Source, LBTSS, and various subsidiaries in connection with the Intrepid Note.[10]   The intercreditor agreement (the "ICA") governing the Intrepid Note provided that Intrepid, as a third priority lender, was prohibited from suing for breach of the Intrepid Note in the event of a Selling

---

[5] *Id.* ¶ 10.

[6] *Id.* ¶ 134.

[7] D.I. 114, Ex. 1.

[8] D.I. 161, Ex. ("NY Decision") at 1–2.

[9] *Id.*

[10] *Id.* at 3–4.

3

Source default until the senior creditors were paid in full.[11] In January 2013, Selling Source refinanced some of its loans with White Oak and Full Circle (such refinancing, the "White Oak Agreement"), and White Oak succeeded to the position as the first priority lender.[12] In August 2013, Intrepid sent a letter to Selling Source claiming that it was in default on the Intrepid Note, though Selling Source disputed this claim.[13]

The New York Action also addressed the termination of Intrepid's perfected security interest and lien on the personal property of Kitara Media, LLC ("Kitara" and such lien, the "Kitara Lien").[14] On October 23, 2010, Kitara asked Intrepid for permission to remove the Kitara Lien so that it could close a line of credit, but Intrepid refused.[15] In an October 30, 2013 email, White Oak's counsel informed Selling Source that it was providing its authorization to terminate the Kitara Lien despite Intrepid's objection.[16]

Intrepid brought the following claims in the New York Action, among others:

- Breach of the Intrepid Note and breach of the implied covenant of good faith and fair dealing against Selling Source and LBTSS;

---

[11] *Id.* at 4–5, 10–12.

[12] *Id.* at 5.

[13] *Id.* at 5–6.

[14] *Id.* at 6.

[15] *Id.*

[16] *Id.*

- Fraudulent transfer in violation of NY Consolidated Laws, Debtor and Creditor Law §§ 273–76 against LBTSS; and

- Declaratory judgment that the termination of the Kitara Lien was improper and is null and void.[17]

The New York court granted the defendants' motion for summary judgment on all counts.[18]

The court held that Intrepid, as a third-priority lender, was barred by the ICA from pursuing its claims since White Oak had yet to be paid in full.[19] The New York court further held that White Oak and Full Circle had not breached the ICA.[20] In addition, the court held that White Oak's termination of the Kitara Lien did not constitute a breach of the ICA because White Oak, as a senior lender, had full power to terminate any liens in connection with the sale of Kitara.[21] The New York court expressly rejected Intrepid's claim that the merger between Kitara and Ascend Acquisition Corp. ("Ascend") was a "sham."[22]

Finally, the New York court rejected Intrepid's fraudulent transfer claims concerning certain transfers made by Selling Source and LBTSS to Lone Star SPV

---

[17] *Id.* at 8–9.

[18] *Id.* at 15–16.

[19] *Id.* at 10–12.

[20] *Id.* at 12–14.

[21] *Id.*

[22] *Id.* at 13–14.

I LLC ("Lone Star") in connection with a May 2013 amendment to the White Oak Agreement.[23]  The New York court found that Intrepid had failed to submit any evidence supporting its claims, and, as such, granted summary judgment in favor of the defendants.[24]

Unsatisfied with this outcome, Intrepid appealed to the New York Supreme Court, Appellate Division.[25]  On January 31, 2023, the appellate court affirmed the New York Decision.[26]

## C.    Delaware Action

Intrepid filed its initial complaint in this action on March 5, 2016 (the "Delaware Action"), though it did not serve its initial complaint on defendants.[27]  Since filing the initial complaint, Intrepid has amended its pleading four times and is now on its Fourth Amended Complaint (the "Complaint"), which was filed on October 17, 2019.  In its Complaint, Intrepid brings claims concerning numerous transactions.  Relevant here are three challenged transactions: the "January 2013 Arrangement," the "Quid Pro Quo Arrangement," and the "Ascend Arrangement."

---

[23] *Id.* at 14–15.

[24] *Id.*

[25] D.I. 181, Ex. A.

[26] *Id.*

[27] D.I. 1.

## 1. January 2013 Arrangement

Intrepid alleges that in January 2013, the Olayan Defendants caused Selling Source to enter the refinancing arrangement referred to as the White Oak Agreement.[28] Intrepid alleges that this refinancing was detrimental to Intrepid and to Selling Source because it imposed "limitations on Selling Source's operational flexibility, and restrictions on Selling Source's dealings with Intrepid."[29] Intrepid alleges that Selling Source incurred significant fees in connection with this transaction and that the Olayan Defendants caused a "secret" amendment to the Selling Source Operating Agreement.[30]

Intrepid claims that these actions were subject to Intrepid's approval as related party dealings and that the actions constituted a breach of the Operating Agreement and breach of the fiduciary duties owed by the Olayan Defendants and others.[31] Intrepid also brings claims for aiding and abetting breach of fiduciary duty, tortious interference, and civil conspiracy in connection with the January 2013

---

[28] FAC ¶¶ 191–93. For purposes of this Memorandum Opinion, "Olayan Defendants" means the following persons: Olayan America Corporation; CREL Investments Limited; CREL/OAC, LLC; London Bay Fund I, LLC; London Bay Capital, LLC; London Bay – TSS Holding Company; LS Holdings Group, LLC; LBTSS; Selling Source Investment Company, LLC; KHL Limited; Lone Star; Sam Humphreys; Alton Irby; Douglas Tulley; Michael Levin; David Kostman; Glenn McKay; Michael Brant; Derek LaFavor; the Derek Craig LaFavor Living Trust; LBCDLF, LLC; and DLF Services, Inc.

[29] *Id.* ¶ 194.

[30] *Id.* ¶¶ 195–99.

[31] *Id.* ¶¶ 200–09.

Arrangement.[32]  In addition, Intrepid claims that the refinancing violated DUFTA "by, among other things, having made by the defendants identified above with intent to hinder, delay or defraud Intrepid."[33]

### 2. Quid Pro Quo Arrangement

Intrepid alleges that the White Oak Defendants and the Olayan Defendants caused Selling Source to execute an amendment to the White Oak Agreement in May 2013 (the "May 2013 Amendment"), which had the alleged effect of looting millions of dollars from Selling Source.[34]  Intrepid alleges that the White Oak Defendants induced the Olayan Defendants to enter into the May 2013 Amendment by threatening Lone Star's equity interest in Selling Source and agreeing to allow the Olayan Defendants to take millions in distributions from Selling Source and Lone Star.[35]

Under the May 2013 Amendment, the Olayan Defendants and the White Oak Defendants caused Selling Source to pay $19 million to LBTSS.  LBTSS then sent these funds to Lone Star so that Lone Star could repay the loan it owed to the White

---

[32] *Id.* ¶¶ 206, 209.

[33] *Id.* ¶ 210.

[34] *Id.* ¶ 239.  For purposes of this Memorandum Opinion, "White Oak Defendants" means the following persons: White Oak; White Oak Merchant Partners, LLC; White Oak Strategic Master Fund, L.P.; and Full Circle Capital Corporation.

[35] *Id.* ¶¶ 252–56.

Oak Defendants.[36]  The White Oak Defendants then increased the amount owed under Selling Source's loan to the White Oak Defendants by $17.5 million, effectively pushing the loan owed by Lone Star down to Selling Source.[37]  Intrepid alleges that in connection with the May 2013 Amendment Selling Source incurred millions of dollars in fees in addition to the millions funneled to LBTSS.[38]

Intrepid claims that these actions were subject to its approval as related party dealings and that the actions constituted a breach of the Operating Agreement and breach of the fiduciary duties owed by the Olayan Defendants and others.[39]  Intrepid also asserts claims for aiding and abetting breach of fiduciary duty, tortious interference, and civil conspiracy in connection with the Quid Pro Quo Arrangement.[40]  In addition, Intrepid claims that the refinancing violated DUFTA "by, among other things, having made by the defendants identified above with intent to hinder, delay or defraud Intrepid."[41]

---

[36] *Id.* ¶ 241.

[37] *Id.* ¶ 247.

[38] *Id.* ¶¶ 249–51.

[39] *Id.* ¶¶ 270–75

[40] *Id.* ¶ 278.

[41] *Id.* ¶ 279.

### 3. Ascend Arrangement

Intrepid alleges that in June 2013 the Olayan Defendants caused Selling Source to merge its subsidiary Kitara with Ascend, which allegedly caused Selling Source to suffer a $23 million loss.[42] Following the merger, one of the director defendants became a director of Ascend and received stock options.[43] In connection with the merger, the White Oak Defendants terminated the Kitara Lien, which partially secured the Intrepid Note.[44]

Intrepid claims that these actions were subject to Intrepid's approval as related party dealings and that the actions constituted a breach of the Operating Agreement and breach of the fiduciary duties owed by the Olayan Defendants and others.[45] Intrepid also asserts claims for aiding and abetting breach of fiduciary duty, tortious interference, and civil conspiracy in connection with the Ascend Arrangement.[46] In addition, Intrepid claims that the Ascend Arrangement was a fraudulent transfer in violation of DUFTA.[47]

---

[42] *Id.* ¶¶ 280, 282.

[43] *Id.* ¶¶ 281, 283–85.

[44] *Id.* ¶ 287.

[45] *Id.* ¶¶ 288–94.

[46] *Id.* ¶¶ 292, 295.

[47] *Id.* ¶¶ 434–35.

**D.      Procedural History**

The Olayan Defendants and the White Oak Defendants each filed motions to dismiss (the "Motions") seeking dismissal of the Complaint on a variety of bases. On December 21, 2020, after defendants had fully briefed and argued the Motions, this Court stayed the Delaware Action pending resolution of the motions for summary judgment in the New York Action.[48]  After the New York Decision was issued, I held a hearing on the Motions on October 20, 2022.  During that hearing, counsel for Intrepid informed me that its appeal of the New York Decision had been fully briefed and that a decision was imminent.[49]  On November 28, 2022, I continued the stay of the Delaware Action.[50]

## II.      LEGAL ANALYSIS

"[T]his Court is required to give a judgment from another jurisdiction the same preclusive effect that it would be given by the court rendering the judgment."[51] In so doing, I must apply the law of the rendering jurisdiction.[52]  Thus, New York law applies in this instance.  New York "has adopted the transactional analysis

---

[48] D.I. 160.

[49] D.I. 179 at 46.

[50] D.I. 180.

[51] *City of Providence v. Dimon*, 2015 WL 4594150, at *6 (Del. Ch. July 29, 2015), *aff'd*, 134 A.3d 758 (Del. 2016) (TABLE).

[52] *See id.*

approach in deciding res judicata issues [so that] once a claim is brought to final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."[53]   Thus, res judicata (or claim preclusion) "applies not only to claims actually litigated but also to claims that could have been raised in prior litigation."[54]

Under New York law, collateral estoppel (or issue preclusion) "is based upon the general notion that a party, or one in privity with a party, should not be permitted to relitigate an issue decided against it."[55]   Only two requirements must be satisfied for the doctrine to apply: (1) "the party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action" and (2) "the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination."[56]

The preclusive effect of either res judicata or collateral estoppel applies both to a party in the prior action and those in privity with that party.[57]   To establish

---

[53] *O'Brien v. City of Syracuse*, 445 N.Y.S.2d 687, 688 (N.Y. 1981).

[54] *In re Hunter*, 794 N.Y.S.2d 286, 291 (N.Y. 2005).

[55] *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 563 N.Y.S.2d 24, 26 (N.Y. 1990).

[56] *Id.*

[57] *See Buechel v. Bain*, 740 N.Y.S.2d 252, 257 (N.Y. 2001) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity."); *Edward Joy Co. v. Hudacs*, 606 N.Y.S.2d 74, 76 (N.Y. App. Div. 1993) ("Res judicata bars future litigation between the same parties, or those in privity with the parties[.]").

privity under New York law, "the connection between the parties must be such that the interests of the nonparty can be said to have been represented at the prior proceeding."[58] "Controlling status over a corporation constitutes privity with it as a matter of law."[59] In addition, "where the interests of a nonparty shareholder or corporate officer were adequately represented by the corporation in the previous action, and where that shareholder/officer actively participated in that previous litigation, the parties are in privity[.]"[60]

Intrepid has alleged that the Olayan Defendants either control Selling Source and LBTSS or were otherwise shareholders or officers of Selling Source and LBTSS.[61] Furthermore, Intrepid has alleged that the White Oak Defendants are under common control with White Oak.[62] Therefore, the Olayan Defendants and the White Oak Defendants are in privity with the defendants in the New York Action, and any preclusive effect of the New York Action would apply to these defendants.

---

[58] *Green v. Santa Fe Indus., Inc.*, 519 N.Y.S.2d 793, 796 (N.Y. 1987).

[59] *Karali v. Araujo*, 11 N.Y.S.3d 823, 826 (N.Y. Supr. Ct. 2015).

[60] *Carpenter v. Fleet/Norstar Bank*, 1992 WL 349771, at *1 (S.D.N.Y. 1992) (applying New York law).

[61] FAC ¶¶ 1, 47–72.

[62] *Id.* ¶¶ 73–80.

**A.    Res Judicata Applies Only To Intrepid's DUFTA Claims Because Of The Operating Agreement's Forum Selection Provision**

As an initial matter, I address whether res judicata is inapplicable to Intrepid's claims because of the Operating Agreement's forum selection provision.  As noted, res judicata applies only to claims that *could* have been raised in prior litigation.[63] Thus, under New York law, res judicata cannot bar claims that were brought in a different forum because they are subject to an exclusive forum selection provision.[64]

The Operating Agreement contains a forum selection provision under which the parties agreed to the exclusive jurisdiction of the courts of Delaware "[a]s to any dispute, claim, or litigation arising out of or relating in any way to this Agreement."[65] Therefore, to the extent Intrepid's claims "arise out of" or "relate to" the Operating Agreement, then such claims could not have been brought in the New York Action and would not be barred by res judicata.[66]

---

[63] *In re Hunter*, 794 N.Y.S.2d at 291–92.

[64] *See Spectris, Inc. v. Milton B. Hollander Family Trust*, 997 N.Y.S.2d 101 (N.Y. Supr. Ct. 2014) (TABLE) ("Here, the parties do not dispute the validity of the Purchase Agreement's forum selection clause.  That clause plainly requires that Plaintiff's breach of contract claim be brought in New York.  The corollary of that requirement is that Plaintiff would have been unable to bring that claim in the Delaware action."), *aff'd*, 31 N.Y.S.3d 469 (N.Y. App. Div. 2016).

[65] D.I. 118, Ex. G § 14.8.

[66] In the context of forum selection provisions, the term "arising out of" is arguably narrower than the term "relating to."  For example, the Delaware Supreme Court has held that an action "arises out of" a contractual relationship if it is "based on the rights and obligations created by the underlying agreement."  *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 151 (Del. 2002).  In contrast, and as explained in greater detail

14

This Court has "considered the connector 'relating to' to be 'paradigmatically broad.'"[67] Indeed, the term "relating to" is one of the "far-reaching terms often used by lawyers when they wish to capture the broadest possible universe."[68] Given its breadth, "[a] provision that extends to matters 'relating to' an agreement encompasses any issues that *touch on* contract rights or contract performance."[69]

Intrepid argues that all its Delaware claims relating to the January 2013 Arrangement, the Quid Pro Quo Arrangement, and the Ascend Arrangement "relate to" the Operating Agreement and are subject to the forum selection provision.[70] Notably, the defendants do not contest the argument that Intrepid's fiduciary duty and breach of the Operating Agreement claims are subject to the forum selection provision. But the White Oak Defendants argue that Intrepid has failed to show that

below, an action "relates to" a contractual relationship if it "touches on" the contract. *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1083 (Del. Ch. 2021). While the parties' briefing on this issue was minimal, the arguments focused on the "relating to" portion of the Operating Agreement's forum selection clause. Thus, I ultimately do not address whether the claims at issue "arise out of" the Operating Agreement.

[67] *Pharm. Prod. Dev., Inc. v. TVM Life Science Ventures VI, L.P.*, 2011 WL 549163, at *5 (Del. Ch. Feb. 16, 2011) (quoting *Lillis v. AT&T Corp.*, 904 A.2d 325, 331 (Del. Ch. 2006)).

[68] *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *10 (Del. Ch. Jan. 23, 2006).

[69] *Flotek Indus., Inc.*, 262 A.3d at 1083 (citations and internal quotations omitted) (emphasis in original).

[70] D.I. 168 ("Pl.'s Supp. AB") at 20–22.

its tortious interference and fraudulent transfer claims would also be subject to the forum selection provision.[71]

Intrepid's tortious interference claims "touch on" the Operating Agreement's rights and its performance.[72] Intrepid pleads that all defendants knew of the Operating Agreement and engaged in intentional acts that were a significant factor in causing the breaches of the Operating Agreement pled elsewhere.[73] As such, Intrepid's tortious interference claims depend on the same set of facts as Intrepid's other claims that are subject to the forum selection clause. Furthermore, resolution of Intrepid's tortious interference claims requires analysis of the Operating Agreement.

---

[71] D.I. 165 ("White Oak Defs.' Supp. Br.") at 3–5; D.I. 172 ("White Oak Defs.' Supp. RB") at 3–4.

[72] *See, e.g., Ashall Homes Ltd. v. ROK Entm't Gp. Inc.*, 992 A.2d 1239, 1253 (Del. Ch. 2010) (finding that non-contract claims, including claim for tortious interference, were subject to the contract's forum-selection provision because the non-contract claims depended on the same set of facts and required analysis of the contract); *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1048 (Del. Ch. 2006) ("Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship. To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid."); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas*, 2001 WL 300735, at *19 (S.D.N.Y. Mar. 27, 2001) (finding that a forum selection clause providing that "any questions arising from the performance of this Contract" encompassed claims for fraud, negligent, misrepresentation, tortious interference with contract, and unjust enrichment).

[73] FAC ¶¶ 422–25.

16

In contrast, Intrepid has not pled that its fraudulent transfer claims touch on the Operating Agreement's rights or its performance. Rather, Intrepid merely asserts throughout its Complaint that each of the complained-of transactions "also violated [DUFTA] by, among other things, having been made by the defendants identified above with intent to hinder, delay, or defraud Intrepid."[74] As such, Intrepid's fraudulent transfer claims were not subject to the Operating Agreement's forum selection clause. Thus, Intrepid's claims under DUFTA could have been brought in the New York Action. As set forth below, I conclude that Intrepid's fraudulent transfer claims asserted against the White Oak Defendants are barred by res judicata and must be dismissed.

**B.** **The Series Of Transactions Addressed By The New York Decision Overlap With The January 2013 Arrangement, Quid Pro Quo Arrangement, And Ascend Arrangement**

The New York Decision addressed the following transactions: (i) the issuance of the Intrepid Note as partial consideration for the Acquired Businesses, which entailed the execution of the ICA; (ii) the January 2013 refinancing of the Bank of New York loan by White Oak and Full Circle; (iii) the May 2013 Amendment to the White Oak Agreement pursuant to which Selling Source distributed $20 million to LBTSS, which then distributed those funds to Lone Star to pay its loan to White

---

[74] *See id.* ¶¶ 176, 190, 210, 228, 279, 435.

Oak; (iv) Selling Source's alleged default on the Intrepid Note; and (v) the termination of the Kitara Lien.

Item (ii) is the same transaction as the alleged January 2013 Arrangement in the Delaware Action. Item (iii) is the same series of transactions as the Quid Pro Quo Arrangement in the Delaware Action. Item (v) is the same transaction as the Ascend Arrangement. As part of Count VIII of its Complaint in the Delaware Action, Intrepid has generally alleged that any transaction that involved a transfer of assets from Selling Source or the incurrence of debt by Selling Source violated DUFTA.[75] To the extent this Count VIII is asserted as to the January 2013 Arrangement, the Quid Pro Quo Arrangement, or the Ascend Arrangement, Intrepid's DUFTA claims could have been brought in the New York Action. Thus, these DUFTA claims are barred by res judicata and must be dismissed.

## C. Intrepid's Claims Against The White Oak Defendants Are Not Barred By Collateral Estoppel

The White Oak Defendants argue that the New York Decision's holding that Intrepid's claims were barred by the ICA and the remedies standstill provision therein has broad collateral estoppel effect.[76] The White Oak Defendants argue that the New York Decision necessarily determined that (1) White Oak is a senior

---

[75] *Id.* ¶¶ 434–35.

[76] White Oak Defs.' Supp. Br. at 6–8.

creditor of Selling Source, (2) White Oak's debt has not been paid in full, and (3) White Oak has not breached the ICA or otherwise acted inequitably toward Intrepid.[77]

The White Oak Defendants argue that these determinations undermine Intrepid's claims against them for aiding and abetting breach of fiduciary duty and unjust enrichment.[78] They argue that Intrepid is collaterally estopped from pursuing its aiding and abetting claims because the ICA signed by Intrepid and Selling Source empowered and authorized White Oak to modify the senior debt, approve extensions of credit in exchange for fees, and generally conduct its business without regard to Intrepid's interests.[79] The White Oak Defendants also argue that Intrepid's unjust enrichment claims are barred by collateral estoppel because the New York Decision held that the senior debt had not been paid in full such that it cannot be argued that White Oak was in any way unjustly enriched by receiving funds from the debtor Selling Source.[80]

---

[77] *Id.* at 6.

[78] The White Oak Defendants also argue that Intrepid is collaterally estopped from pursuing its breach of fiduciary duty claims against them. As set forth in this Court's bench ruling delivered contemporaneously with this Memorandum Opinion, Intrepid's claims for breach of fiduciary duty against the White Oak Defendants are dismissed under Rule 12(b)(6). This Memorandum Opinion therefore does not address the White Oak Defendants' collateral estoppel argument as to these claims.

[79] White Oak Defs.' Supp. Br. at 6–8.

[80] *Id.* at 8.

The White Oak Defendants' arguments fail. "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[.]"[81] Furthermore, "[p]reclusive effect . . . will only be given where the particular issue was actually litigated, squarely addressed and specifically decided."[82] "Generally, for a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."[83]

The White Oak Defendants have failed to meet their burden to establish the identity of the issues. Intrepid did not bring claims for either aiding and abetting breach of fiduciary duty or unjust enrichment in the New York Action. These equitable claims are distinct from the breach of contract claims brought by Intrepid in the New York Action. Furthermore, the New York court's conclusion that White Oak did not breach the ICA is not identical to Intrepid's claims that White Oak engaged in other conduct that either aided and abetted breaches of fiduciary duty by other defendants or unjustly enriched the White Oak Defendants. This is because

---

[81] *Bruno v. Bank of N.Y.*, 101 N.Y.S.3d 124, 127 (N.Y. App. Div. 2019) (quoting *Lamberti v. Plaza Equities, LLC*, 77 N.Y.S.3d 420, 423 (N.Y. App. Div. 2018)).

[82] *Curley v. Bon Aire Props., Inc.*, 2 N.Y.S.3d 571, 573 (N.Y. App. Div. 2015) (quotations omitted).

[83] *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 563 N.Y.S.2d 24, 28 (N.Y. 1990) (quotations omitted).

Intrepid premises these other claims on allegations that extend beyond any allegation concerning the ICA.

Therefore, the New York Decision does not have collateral estoppel effect concerning Intrepid's claims against the White Oak Defendants for aiding and abetting breach of fiduciary duty and unjust enrichment.

## D. Intrepid's Claims Against The Olayan Defendants Are Not Barred By Collateral Estoppel

The Olayan Defendants assert a variety of arguments that Intrepid's claims are barred by virtue of the New York Decision. To begin, they argue that Intrepid's claims relating to the January 2013 Arrangement and Quid Pro Quo Arrangement are collaterally estopped because the New York Decision held that the White Oak Agreement did not impair Intrepid's rights under the Intrepid Note or the ICA.[84] These arguments fail for the same reasons addressed above with respect to the White Oak Defendants.[85]

The Olayan Defendants also argue that Intrepid's claims concerning the Ascend Arrangement are barred by collateral estoppel because the New York Decision held that Intrepid had failed to support with any evidence its allegation that the sale of Kitara was a "sham" intended solely to release Intrepid's lien on Kitara.[86]

---

[84] D.I. 167 ("Olayan Defs.' Supp. Br.") at 11–15.

[85] *See supra* Section II.C.

[86] Olayan Defs.' Supp. Br. at 12–13; *see also* NY Decision at 13–14.

21

But the termination of the Kitara Lien is just one part of Intrepid's claims concerning this arrangement, and the primary allegations in the Complaint concerning the Ascend Arrangement is that certain of the Olayan Defendants breached the Operating Agreement and violated their fiduciary duties by depriving Intrepid of the opportunity to vote on the transaction. Therefore, the Olayan Defendants have failed to meet their burden to show identity of the issue.[87]

## E.    Intrepid's Damages Theory Is Not Foreclosed By The New York Decision

Both the White Oak Defendants and the Olayan Defendants argue that Intrepid's claims are also barred by collateral estoppel because the New York Decision effectively forecloses Intrepid's right to money damages.[88] Defendants argue that Intrepid would not be entitled to recover any damages because the New York Decision held that Intrepid could not recover any amount under the Intrepid Note until the senior creditors had been paid in full.[89]

But unlike the New York Action, Intrepid's Complaint does not seek repayment of the Intrepid Note. Rather, it asserts numerous claims concerning

---

[87] While the defendants have failed to meet their burden as to collateral estoppel for the Ascend Arrangement, I nonetheless highlight that the New York Decision conclusively decided that White Oak had the power under the ICA to terminate the Kitara Lien. Therefore, I do not foresee the issue of whether the White Oak Defendants were so empowered to be the subject of further litigation in this Court.

[88] White Oak Defs.' Supp. Br. at 7–8; Olayan Defs.' Supp. Br. at 8–9.

[89] White Oak Defs.' Supp. Br. at 7–8; Olayan Defs.' Supp. Br. at 8–9.

breach of fiduciary duty, civil conspiracy, tortious interference, and seeks declaratory relief and damages to be proved at trial. Therefore, it is unclear whether the New York Decision's holding concerning repayment of the Intrepid Note would have any sort of collateral estoppel effect on Intrepid's claims and relief sought in the Delaware Action.

### III.    CONCLUSION

For the reasons set forth herein, the Motions are GRANTED with respect to Count VIII of the Complaint to the extent Count VIII is related to the January 2013 Arrangement, the Quid Pro Quo Arrangement, or the Ascend Arrangement. To the extent the Motions seek dismissal of Intrepid's remaining claims based on either res judicata or collateral estoppel, the Motions are DENIED. The remaining bases for dismissal set forth in the Motions will be addressed in a bench ruling delivered contemporaneously with this Memorandum Opinion.