*Beijing Neu Cloud v. IBM Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2023

(Argued: December 1, 2023          Decided: July 25, 2024)

No. 22-3132

———————————————————

BEIJING NEU CLOUD ORIENTAL SYSTEM TECHNOLOGY CO., LTD.,

*Plaintiff-Appellant,*

-v.-

INTERNATIONAL BUSINESS MACHINES CORPORATION, IBM WORLD TRADE
CORPORATION, IBM CHINA COMPANY LIMITED,

*Defendants-Appellees.* [*]

———————————————————

Before:      LIVINGSTON, *Chief Judge*, MENASHI, and KAHN, *Circuit Judges*.

Plaintiff-Appellant Beijing Neu Cloud Oriental System Technology Co., Ltd. ("Neu Cloud") appeals from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissing its amended complaint on plausibility and timeliness grounds. In the amended complaint, Neu Cloud asserted a single cause of action for trade secret misappropriation under the

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

1

Defend Trade Secrets Act of 2016 ("DTSA") against Defendants-Appellees International Business Machines Corporation ("IBM"), IBM World Trade Corporation ("IBM WTC"), and IBM China Company Limited ("IBM China") (collectively, "IBM Defendants").

Shortly after initiating its federal action, Neu Cloud sued the IBM Defendants in New York state court, alleging state-law causes of action for unfair competition, unjust enrichment, breach of fiduciary duty, breach of contract, and tortious interference. The New York Supreme Court dismissed Neu Cloud's state complaint on various grounds, including timeliness, before the district court rendered a judgment in the federal proceeding. Subsequently, the district court granted the IBM Defendants' motion to dismiss, holding that Neu Cloud's amended complaint failed to state a plausible and timely DTSA claim. The district court, however, declined to hold that the earlier judgment of the New York Supreme Court barred Neu Cloud's DTSA claim.

On appeal, the parties dispute whether the district court properly dismissed Neu Cloud's amended complaint. The IBM Defendants, while arguing in support of the district court's stated bases for dismissal, invite us to affirm the judgment below on the alternative ground of *res judicata*. We accept that invitation. Applying principles of New York law to the record before us, we hold that the judgment of the New York Supreme Court bars Neu Cloud from asserting its DTSA claim in this separate action. Accordingly, we **AFFIRM** the district court's judgment on the narrow ground of *res judicata*.

FOR PLAINTIFF-APPELLANT: NICOLE A. SAHARSKY (Gary M. Hnath & Minh Nguyen-Dang, *on the brief*), Mayer Brown LLP, Washington, D.C.; Hao Tan & Shen Wang, Arch & Lake LLP, Chicago, IL.

FOR DEFENDANTS-APPELLEES: KEVIN S. REED (William B. Adams & Jeremy A. Baldoni, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Plaintiff-Appellant Beijing Neu Cloud Oriental System Technology Co., Ltd. ("Neu Cloud") appeals from a November 10, 2022 judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissing its amended complaint against Defendants-Appellees International Business Machines Corporation ("IBM"), IBM World Trade Corporation ("IBM WTC"), and IBM China Company Limited ("IBM China") (collectively, "IBM Defendants") as untimely and inadequately pleaded.

In the amended complaint, Neu Cloud, a joint venture between IBM, non-party Beijing TeamSun Technology Co., Ltd. ("TeamSun"), and non-party Zhuangyan Hao, alleges that the IBM Defendants misappropriated its trade secret information in violation of the Defend Trade Secrets Act of 2016 ("DTSA"). These allegations stem from the IBM Defendants' investment in Neu Cloud to develop and sell certain IBM products in China, and the IBM Defendants' subsequent creation of a second joint venture, INSPUR Power Commercial Systems Co. Ltd. ("INSPUR Power"), to do the same. Neu Cloud asserts that, from 2015 to 2018, it submitted 89 special bids to the IBM Defendants containing confidential customer

3

information that the IBM Defendants later disclosed to INSPUR Power, without authorization, to boost that joint venture's nascent business.

As its position in the marketplace declined, Neu Cloud filed suit against the IBM Defendants in federal court, asserting a single cause of action for trade secret misappropriation under the DTSA. Only days later, Neu Cloud, together with TeamSun, sued the IBM Defendants in New York state court under various state-law causes of action. The New York Supreme Court rendered a judgment dismissing the state complaint on March 23, 2022. Subsequently, on November 9, 2022, the district court dismissed Neu Cloud's federal amended complaint for three reasons: (1) the DTSA claim was time-barred under either of two different contractual two-year statute of limitations provisions; (2) Neu Cloud failed to state a plausible DTSA claim; and (3) there was no basis to exercise personal jurisdiction over IBM China in New York.[1] However, the district court declined to dismiss

---

[1] The IBM Defendants filed two motions to dismiss below: the first pertaining to Neu Cloud's initial complaint, and the second to Neu Cloud's amended complaint. The district court granted the IBM Defendants' first motion to dismiss on March 25, 2022, days after the New York Supreme Court dismissed the state-court complaint. The district court granted the IBM Defendants' second motion to dismiss on November 9, 2022, resulting in the final judgment currently on appeal before us.

on the ground, advanced by the IBM Defendants, that the earlier judgment from the concurrent state-court proceeding barred Neu Cloud's DTSA claim.

On appeal, Neu Cloud disputes each ground for dismissal, arguing that its DTSA claim was timely asserted, that its amended complaint sufficiently pleads trade secret misappropriation, and that the district court had personal jurisdiction over IBM China.[2]   The IBM Defendants seek affirmance of the judgment below, either on the basis of *res judicata* or the grounds adopted by the district court.   Neu Cloud challenges both the district court's stated bases for dismissal and the alternative ground of *res judicata*, arguing as to the latter that the distinct "facts and evidence" involved in each cause of action render *res judicata* inapplicable. Appellant's Reply Br. at 30.

---

[2] At the start, we agree with the district court that it had no basis to exercise personal jurisdiction over IBM China.   Thus, we consider the IBM Defendants' *res judicata* argument only as it pertains to IBM and IBM WTC—entities over which the district court indisputably had personal jurisdiction.   *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alteration and citation omitted)); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district court,' without which the court is 'powerless to proceed to an adjudication.'" (alteration and citation omitted)); *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 268 (2017) (the requirements of personal jurisdiction "must be met as to each defendant" (citations omitted)).

We disagree with Neu Cloud's analysis of the *res judicata* issue. Based on our independent review of the record, we conclude that the state-court judgment satisfies each of the requirements under New York law for *res judicata* to apply. As a corollary holding, we determine that Neu Cloud could have asserted its DTSA claim in New York state court, as nothing in the DTSA suggests that federal courts have exclusive jurisdiction over claims arising under the statute. Having reached that conclusion, we decline to address the grounds on which the district court dismissed Neu Cloud's amended complaint and instead affirm the judgment below on the bases of *res judicata*, as to IBM and IBM WTC, and personal jurisdiction, as to IBM China.

Accordingly, we **AFFIRM** the judgment of the district court dismissing Neu Cloud's amended complaint.

## BACKGROUND

I.      **Factual Background**[3]

---

[3] The factual background presented here is derived from the allegations in Neu Cloud's amended complaint unless otherwise noted. "JA" refers to the parties' Joint Appendix.

## A. Collaboration Between Neu Cloud and the IBM Defendants

Prior to the formation of Neu Cloud, the IBM Defendants collaborated with TeamSun to establish a market in China for developing and selling IBM Power Systems server products. Seeking to further expand the Chinese market for those products, TeamSun and Hao created Neu Cloud in 2014, with TeamSun owning a 70% interest in the joint venture and Hao holding the remaining shares. Subsequently, IBM China entered into a Share Purchase Agreement ("SPA") with TeamSun and Hao to acquire 19.35% of the shares of Neu Cloud. Under the terms of the SPA, "Neu Cloud was to act as the reseller of certain US IBM products through foreign commerce in China." JA-652, ¶ 56.

Over the course of their collaboration, Neu Cloud and IBM WTC entered into three agreements of relevance to this dispute. *First*, in January 2015, the parties signed the OpenPower Original Equipment Manufacturer Agreement ("OEMA") allowing Neu Cloud "to purchase IBM Power Systems[] servers . . . and to develop [its] own solutions based on such servers and sell them to end users." JA-654, ¶ 66. The OEMA contains a choice-of-law clause specifying Delaware law, as well as a two-year statute of limitations provision for any claims arising out of or related to the OEMA. In June 2016, the OEMA was

7

amended to create a special bids process, pursuant to which Neu Cloud could request discounted prices for certain sales opportunities.

*Second*, Neu Cloud and IBM WTC entered into the Business Partner Agreement ("BPA") in April 2015. The BPA established Neu Cloud as a "Business Partner-Distributor" that could market products directly to end users. As with the OEMA, the BPA contains a choice-of-law clause and a limitations period, providing that New York law governs "all the rights, duties and obligations arising under, or relating, in any matter to, the subject matter of [the] Agreement," JA-1170, § 15, and that any claims "arising out of or related to" the BPA are subject to a two-year statute of limitations period, JA-1161, § 3.2. The BPA also created a special bids process that is materially similar to that contained in the OEMA.

*Third*, in April 2015, Neu Cloud and IBM WTC signed the Agreement for Exchange of Confidential Information ("AECI"), which has a choice-of-law provision specifying that Chinese law applies "to govern, interpret, and enforce all of [the] rights, duties, and obligations arising from, or relating in any manner to, the subject matter" of the AECI. JA-1137, § 8(g). The AECI governs the parties' confidentiality obligations with respect to the special bids process,

8

including authorizations made thereto and "the terms applicable to [each] Special Bid." JA-1164, § 4.5. To maintain information as confidential under the AECI, the discloser is directed to "mark[] [that information] with a restrictive legend" or to otherwise "identif[y] [it] as confidential at the time of disclosure." JA-1136, § 1. The AECI provides an exception, however, for the recipient of confidential information to "use in its business activities the ideas, concepts and know-how contained in the Discloser's Information which are retained in the memories of Recipient's employees who have had access to the Information under this Agreement." *Id.* § 4.

### B. The IBM Defendants' Alleged Misappropriation of Neu Cloud's Customer Information

On September 8, 2017, the IBM Defendants, together with INSPUR Co. Ltd. ("INSPUR"), announced the creation of INSPUR Power. Thereafter, the IBM Defendants allegedly began to disclose Neu Cloud's confidential customer information to INSPUR Power in order to drive the latter's business. The IBM Defendants acquired that information through Neu Cloud's submission of 89 special bids, which encompassed information from a total of 70 customers. As part of the special bids process, Neu Cloud provided the IBM Defendants with information including "the names of specific customers," their addresses,

9

strategies for "doing business" with them, "the pricing and margins at which [they] were willing to buy" IBM products, and the "specific products" they were interested in. JA-655, ¶ 75. The special bids also contained Neu Cloud's "confidential analyses of the competitive situation and bid strategy for each customer." *Id.*

Neu Cloud took measures to protect the confidentiality of its customer information. Internally, Neu Cloud restricted access to the information and implemented processes for securely maintaining it, such as requiring digital copies of the information to be encrypted and physical copies to be destroyed. Externally, Neu Cloud and the IBM Defendants agreed to certain confidentiality measures pertaining to the information, limiting access to only "a few individuals" at IBM China and IBM WTC and forbidding its use or disclosure except in connection with Neu Cloud's special bids. JA-658, ¶ 92.

Nevertheless, the IBM Defendants allegedly used the confidential information to jump-start INSPUR Power's business. Specifically, the IBM Defendants "encouraged" at least two employees of IBM China "with knowledge of Neu Cloud's [confidential customer] information" to join INSPUR Power. JA-656, ¶ 80. Once there, those employees shared Neu Cloud's customer

information with the new joint venture, which prompted INSPUR Power "to contact Neu Cloud's customers and inform them of INSPUR Power's rival business." JA-663, ¶¶ 116–17. As a result, at least seven of Neu Cloud's 70 special bids customers, or 10% of that customer base, "conducted business with INSPUR Power," JA-660, ¶ 99, causing Neu Cloud's business to be "nearly eradicate[d]," JA-662, ¶ 115.

## C. The State-Court Action

Together with TeamSun, Neu Cloud filed suit in New York state court against the IBM Defendants on September 13, 2021, alleging causes of action for unfair competition, unjust enrichment, breach of fiduciary duty, breach of contract, and tortious interference. The New York Supreme Court granted the IBM Defendants' motion to dismiss on March 23, 2022. That dismissal was based on multiple grounds, including that: (1) the state-law claims asserted in the complaint were a nullity because Chinese substantive law applied; (2) each of the claims was time-barred under the OEMA's two-year limitations period; and (3) IBM China was not subject to personal jurisdiction in New York. Neu Cloud and TeamSun appealed that decision to the Appellate Division, which has not yet resolved the matter.

11

## II. Procedural Background

Days before it initiated the state-court action, Neu Cloud filed the instant suit in federal court against the IBM Defendants. After dismissing Neu Cloud's initial complaint on March 25, 2022, the district court granted Neu Cloud leave to replead. Neu Cloud filed an amended complaint on April 11, 2022. Subsequently, the IBM Defendants renewed their motion to dismiss, arguing that: (1) Neu Cloud's DTSA claim was time-barred; (2) Neu Cloud failed to state a plausible DTSA claim; and (3) IBM China was not subject to suit in New York. The IBM Defendants also asserted a new ground for dismissal: that the intervening judgment of the New York Supreme Court, rendered before the district court ruled on either motion to dismiss, precluded the instant DTSA claim as *res judicata*. On November 9, 2022, the district court granted the motion to dismiss, agreeing with each of the IBM Defendants' arguments for dismissal except that related to *res judicata*. Neu Cloud timely appealed the district court's dismissal of its amended complaint.

## DISCUSSION

Notwithstanding the many arguments raised on appeal, we write only to consider whether Neu Cloud's DTSA claim is barred by *res judicata*. Based on our

independent review of the record, we conclude that it is. Because our holding as to *res judicata* is sufficient to resolve this appeal, we affirm the district court's judgment on this narrow ground.

### I. Applicable Law

We review "*de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6)." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). At the motion to dismiss stage, we accept "all factual allegations in the complaint . . . as true" and draw "all inferences . . . in the plaintiff's favor." *Id.* at 306–07. "We are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995). And central to this appeal is whether the district court correctly determined that Neu Cloud could litigate its DTSA claim in this proceeding notwithstanding the New York Supreme Court's prior judgment of dismissal.

In assessing the preclusive effect of a prior state-court judgment, we apply the preclusion law of the state that issued the judgment. *See Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (applying New York law to determine the preclusive effect of a judgment rendered in the context of a New York state

13

action); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Because the New York Supreme Court issued the relevant prior judgment, we apply New York law to determine the preclusive effect of that judgment in this action.

Under New York preclusion law, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005). This rule applies if the subsequent claim was "actually litigated" in the prior action or if it merely "could have been raised in the prior litigation." *Id.* To bar a subsequent claim, however, the prior judgment must have been "on the merits" and "rendered by a court of competent jurisdiction," in the context of a proceeding to which "the party against whom the doctrine [of *res judicata*] is invoked was a party." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008).

New York courts use a "transactional analysis approach" to determine whether a claim "could have been raised in the prior litigation." *In re Hunter*, 827 N.E.2d at 274. Under this approach, any subsequent claim that "aris[es] out of

14

the same transaction or series of transactions" as the adjudicated claim is barred, "even if based upon different theories or if seeking a different remedy." *Id.* (citations omitted). The "same transaction" or "series of transactions" standard turns on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723, 725 (N.Y. 2005) (citations omitted). Thus, separately asserted legal theories that "depend on different shadings of the facts" or that "emphasize different elements of the facts" may nevertheless arise out of the same transaction or series of transactions if those legal theories are "grounded on the same gravamen of the wrong upon which the action[s] [are] brought." *Smith v. Russell Sage Coll.*, 429 N.E.2d 746, 749 (N.Y. 1981) (citation omitted); *see also O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1160 (N.Y. 1981) ("When alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single 'factual grouping' . . . the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." (citation omitted)).

15

## II. The State-Court Judgment Precludes Neu Cloud's DTSA Claim.

Applying these principles here, we conclude that the earlier judgment of the New York Supreme Court bars Neu Cloud from asserting its DTSA claim in this proceeding.

### A. The State-Court Judgment Was on the Merits.

The New York Supreme Court's dismissal of the state-court complaint constitutes a judgment on the merits. That dismissal was predicated on two primary holdings: (1) Chinese substantive law applies under New York's choice-of-law rules, rendering the state-law claims asserted in the complaint a nullity; and (2) even if Chinese law did not apply, the state-law claims are time-barred under the OEMA's two-year statute of limitations.[4] Each of these grounds for dismissal, including the timeliness one, is a judgment on the merits under New York law. *See Bray v. N.Y. Life Ins.*, 851 F.2d 60, 64 (2d Cir. 1988) ("New York considers a dismissal on statute of limitations grounds at least sufficiently close to a decision

---

[4] The New York Supreme Court also concluded that it "lack[ed] personal jurisdiction over IBM China." JA-705. As noted above, *see supra* n.2, we agree that the allegations in Neu Cloud's amended complaint provide no basis for a New York court to exercise personal jurisdiction over IBM China.

16

on the merits to bar a second action." (internal quotation marks and citations omitted)).

Therefore, the New York Supreme Court reached a decision on the merits that, for purposes of *res judicata*, preceded any final judgment of the district court in the federal proceeding. *See* Restatement (Second) of Judgments § 14 (Am. L. Inst. 1982) ("[T]he effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect."); *see also Forte v. Kaneka Am. Corp.*, 493 N.Y.S.2d 180, 183 (2d Dep't 1985) (same). That conclusion is not disturbed by the pendency of Neu Cloud's appeal to the Appellate Division. *See DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) ("Under New York law, the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." (internal quotation marks and citations omitted)).

## B. The State Court Was Competent to Adjudicate the Claims.

It is undisputed that the New York Supreme Court was competent to adjudicate the state-law claims asserted in the complaint. The question remains,

however, whether the New York Supreme Court would have had jurisdiction to hear Neu Cloud's federal DTSA claim.

We hold that the New York Supreme Court would have been competent to adjudicate the DTSA claim. We presume, consistent with our "system of dual sovereignty," that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). This presumption of state-court competence can be rebutted "if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim." *Id.* at 459. To do so, Congress must indicate its intent for jurisdiction to lie exclusively in the federal courts "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* at 459–60 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981)). None of these factors—the statutory text, the legislative history, or the compatibility between state-court jurisdiction and federal interests—rebuts the presumption of concurrent jurisdiction here.

*First*, the text of the DTSA "does not state nor even suggest that . . . jurisdiction shall be exclusive" in the federal courts. *Id.* at 460–61 (citation

18

omitted). The jurisdictional provision of the DTSA provides only that "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section." 18 U.S.C. § 1836(c). Statutes with materially analogous jurisdictional grants have been interpreted to confer concurrent jurisdiction on the state courts. *See, e.g.*, *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) ("[E]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." (quoting 42 U.S.C. § 2000e–5(f)(3) (1982))); *Gulf Offshore*, 453 U.S. at 478–79 ("The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf . . . ." (referencing 43 U.S.C. § 1333(b) (1976))). In fact, "it is black letter law that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Tafflin*, 493 U.S. at 461 (internal alterations and citations omitted). Because the DTSA does not "expressly confine[] jurisdiction to federal courts [n]or oust[] state courts of their presumptive jurisdiction," we conclude that the plain text of the DTSA is

19

"strong . . . evidence" that Congress intended for jurisdiction over DTSA claims to be concurrent. *Yellow Freight Sys.*, 494 U.S. at 823.

*Second*, the legislative history "reveals no evidence that Congress . . . affirmatively intended to confer exclusive jurisdiction over [DTSA] claims on the federal courts." *Tafflin*, 493 U.S. at 461. In fact, the only mention of exclusive jurisdiction in the legislative history supports the opposite conclusion—that the DTSA vests the state and federal courts with concurrent jurisdiction over claims arising under the statute. Specifically, the Senate's DTSA report references a prior version of 18 U.S.C. § 1836(b) providing that "[t]he district courts of the United States shall have *exclusive* original jurisdiction of civil actions" in which the Attorney General seeks injunctive relief for trade secret misappropriation. 18 U.S.C. § 1836(b) (2015) (amended 2016) (emphasis added). The DTSA struck this language from the U.S. Code and did not replace it with an analogous exclusive jurisdiction provision. *See* Defend Trade Secrets Act of 2016, S. 1890, 114th Cong. § 2(a) (2016) ("Section 1836 of title 18, United States Code, is amended by striking subsection (b)."). This "record of *enacted* changes Congress made to the [DTSA's] statutory text over time" is particularly probative of statutory meaning, *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J.,

dissenting), indicating that Congress intentionally eliminated exclusive federal jurisdiction from the DTSA's new enforcement scheme, *see* S. REP. No. 114–220, at 5 (2016).

To be sure, one House Report reveals a preference for the federal courts to adjudicate DTSA claims, given the interstate nature of trade secret misappropriation and the unique tools available to federal district courts to expeditiously resolve such claims. *See* H.R. REP. No. 114–529, at 4 (2016) ("In a globalized and national economy, Federal courts are better situated to address these concerns [associated with trade secret misappropriation]."). We cannot conclude from this single expression of a preference alone, however, that Congress "affirmatively or unmistakably intended jurisdiction to be exclusively federal." *Tafflin*, 493 U.S. at 462. To the contrary, Congress's only "affirmative[] or unmistakabl[e]" action, *id.*, in enacting the DTSA was to repeal the statute's prior exclusive jurisdiction provision and to replace it with a jurisdictional grant that is silent on exclusivity.

*Finally*, we perceive no incompatibility between state-court jurisdiction over DTSA claims and the federal interests embodied in that statute. In assessing compatibility, we look to factors such as "the desirability of uniform

interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims." *Id.* at 464 (quoting *Gulf Offshore*, 453 U.S. at 483–84). These considerations uniformly weigh in favor of concurrent jurisdiction. To begin, the DTSA largely mirrors the Uniform Trade Secrets Act ("UTSA"), which nearly all states have adopted. *See* Joseph F. Cleveland Jr., *Preventing Trade Secrets Theft Under the Defend Trade Secrets Act*, 66 Fed. Law. 72, 73 (2019) ("DTSA created a body of federal trade secret laws that [complement] and largely mirror the [UTSA], which has been adopted in 48 states."); H.R. REP. No. 114–529, at 5 (noting that the DTSA does not preempt the UTSA, but rather "offers a complementary Federal remedy"). Because the DTSA's "governing rules are borrowed from state law," state judges arguably have greater expertise in applying the DTSA than federal judges. *Gulf Offshore*, 453 U.S. at 484. It also cannot be said, given the influence of state law on the DTSA, that claims asserted under the statute are "peculiarly federal." *Tafflin*, 493 U.S. at 464 (citation omitted). The mere fact that DTSA claims are "labeled federal rather than state law" is insufficient to suggest that state-court judges will be inhospitable to such claims. *Gulf Offshore*, 453 U.S. at 484. And, finally, the exercise of concurrent jurisdiction by state courts over DTSA claims "creates no

22

significant danger of inconsistent application of federal [trade secret] law."
*Tafflin*, 493 U.S. at 464–65. Federal courts "retain full authority and responsibility for the interpretation and application" of the criminal prohibitions on economic espionage and theft of trade secrets, *see* 18 U.S.C. §§ 1831, 1832, 3231, and state courts may take guidance from "federal court interpretations" of those related offenses, *Tafflin*, 493 U.S. at 465. Moreover, concurrent jurisdiction will not "result in any more inconsistency than that which a multimembered, multi-tiered federal judicial system already creates." *Id.*

Our conclusion that state courts have concurrent jurisdiction over DTSA claims finds support in case law from other courts—both federal and state. To start, district courts throughout the country have recognized that state courts can hear DTSA claims. *See AA Med. P.C. v. Almansoori*, No. 20-cv-3852, 2023 WL 7688688, at *16 (E.D.N.Y. Oct. 4, 2023); *Preferred Freezer Servs., LLC v. Americold Realty Tr.*, No. 19-cv-2926, 2020 WL 774132, at *4 (S.D.N.Y. Feb. 18, 2020); *XPO GF Am., Inc. v. Qiuheng Liao*, No. 19-4173, 2019 WL 8226077, at *4 (C.D. Cal. Sept. 27, 2019); *Allstate Ins. Co. v. Jewell*, No. 17-cv-140, 2019 WL 3526703, at *4 (W.D. Ky. May 21, 2019); *1-800 Remodel, Inc. v. Bodor*, No. 18-cv-472, 2019 WL 856399, at *2 n.3 (C.D. Cal. Jan. 28, 2019); *G4S Secure Integration LLC v. EX2 Tech., LLC*, No. 17-cv-

23

4277, 2017 WL 11884191, at *5 (N.D. Ill. July 19, 2017). *But see Custom Truck One Source, Inc. v. Norris*, No. 22-cv-46, 2022 WL 474006, at *4 (N.D. Ind. Feb. 16, 2022) ("[W]hether concurrent jurisdiction exists over the DTSA claim is a subject of debate."); *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 379 (S.D.N.Y. 2020) (recognizing "there is debate concerning whether" DTSA claims can "even be brought in state court"); *Lamont v. Conner*, No. 18-cv-4327, 2019 WL 1369928, at *7 (N.D. Cal. Mar. 26, 2019) (concluding, without analysis, that the DTSA "provides exclusive . . . jurisdiction to the District Courts"). Indeed, several state courts have exercised jurisdiction over DTSA claims. *See, e.g., BIOMILQ, Inc. v. Guiliano*, No. 22-255, 2024 WL 1698061, at *20–21 (N.C. Super. Ct. Apr. 19, 2024); *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 20-7165, 2021 WL 2530984, at *11–15 (N.C. Super. Ct. June 18, 2021); *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 360–61 (Tex. App. 2018).

We therefore hold, based on the above factors, that state courts have concurrent jurisdiction to adjudicate claims arising under the DTSA. There is nothing in the statutory text, legislative history, or underlying policies of the DTSA that leads to a contrary conclusion. Without an explicit indication of Congress's intent to divest the state courts of concurrent jurisdiction, we are compelled to

24

interpret the DTSA consistent with "the respect accorded coequal sovereigns" in our federal system. *Tafflin*, 493 U.S. at 466.

## C. The State-Court Action Involved Neu Cloud.

It is clear from the record that "the party against whom" the IBM Defendants are invoking *res judicata*—Neu Cloud—"was a party to the previous action." *Applied Card Sys.*, 894 N.E.2d at 12. Accordingly, there is sufficient identity of the parties for *res judicata* to apply.

## D. The Claims in Each Action Involve the Same Factual Predicate.

In seeking to defeat the application of *res judicata*, Neu Cloud argues principally that "[t]he state-court action and this case involve different facts and evidence." Appellant's Reply Br. at 31. Our review of the record suggests otherwise.

Although framed as distinct legal theories, Neu Cloud's state-law and DTSA claims arise out of "the same transaction or series of transactions." *In re Hunter*, 827 N.E.2d at 274 (citations omitted). Fundamentally, both allege the same injury based on the same series of events: that the IBM Defendants, in violation of state and federal law, created a competing joint venture that undermined Neu Cloud's business. And the complaints rely on nearly identical allegations in support of

their respective causes of action. For example, in their state-court complaint, Neu Cloud and TeamSun allege that the IBM Defendants "profited as a result of obtaining Neu Cloud's customer lists" and that such profit was wrongful because the customer lists were sent "based on the understanding that they would not be shared with others and not be used for purposes other than the parties' collaboration." JA-689, ¶ 83; JA-691, ¶ 96. Neu Cloud's federal complaint makes analogous allegations in support of its DTSA claim. *See* JA-657–59, ¶¶ 87–94 (allegations in the DTSA count related to Neu Cloud's customer information). And elsewhere in the state complaint, Neu Cloud uses language that almost precisely mirrors its federal complaint. *Compare* JA-676–77, ¶ 1 (state complaint) ("Plaintiffs bring this action as a result of Defendants' fraudulent and unfair business practices. Over a number of years, Defendants have played a bait-and-switch game with TeamSun and Neu Cloud, repeatedly inducing TeamSun and Neu Cloud through later-breached contracts to expend resources and provide Defendants with access to sensitive, confidential customer information, which Defendants then secretly used to create competing ventures in China."), *with* JA-643, ¶ 1 (amended federal complaint) ("Neu Cloud brings this action as a result of IBM's fraudulent and unfair business practices. Over a number of years, IBM has

26

played a bait-and-switch game with Neu Cloud, repeatedly inducing it to provide IBM with access to sensitive, confidential customer information, which IBM then misappropriated and secretly used to create competing ventures in China.").

Notwithstanding these similarities, Neu Cloud attempts to distinguish the injuries asserted in the respective complaints. Neu Cloud argues, for example, that the state-court action was initiated to recover "the hundreds of millions of dollars [Neu Cloud and TeamSun] spent to develop the market for IBM server products in China," whereas the federal action "seeks recovery of the value of the trade secrets IBM misappropriated." Appellant's Reply Br. at 32. But this argument is unavailing. The relevant question is whether Neu Cloud *should* have sought the latter recovery in its state-court action, given that both injuries arose "out of the same or related facts." *O'Brien*, 429 N.E.2d at 1160.

We answer that question in the affirmative. At bottom, Neu Cloud's state and federal complaints are grounded in the same allegations of wrongdoing by the IBM Defendants. In broad terms, both complaints allege that: (1) TeamSun worked with Hao to expand the Chinese market for certain IBM products (JA-680, ¶ 23; JA-651, ¶¶ 52–53); (2) the IBM Defendants falsely indicated to TeamSun that they were not collaborating with INSPUR on similar projects (JA-682, ¶¶ 35–36;

27

JA-652, ¶¶ 58–59); (3) the IBM Defendants subsequently established INSPUR Power as a rival joint venture and induced employees of IBM China to join INSPUR Power for the purpose of misappropriating Neu Cloud's customer information (JA-686–87, ¶¶ 57–68; JA-656, ¶¶ 77–82); and (4) as a result, Neu Cloud lost market share and sales opportunities (JA-687, ¶ 67; JA-656, ¶ 83). The fact that Neu Cloud did not include in its state complaint allegations related to the DTSA claim, "including the details of the trade secrets, how Neu Cloud developed the trade secrets, the economic value of the trade secrets, . . . and the measures Neu Cloud took to keep its information confidential," Appellant's Reply Br. at 31–32, suggests only that the respective complaints "depend on different shadings of the facts" or "emphasize different elements of the facts," *Smith*, 429 N.E.2d at 749 (citation omitted). Those subtle differences, however, are not enough to overcome the many similarities that, in their totality, render the respective complaints sufficiently "related in time, space, origin, or motivation" to trigger *res judicata*. *Xiao Yang Chen*, 843 N.E.2d at 725 (citations omitted).

Neu Cloud points finally to the distinct evidentiary requirements for its state-law and DTSA claims. But this argument, too, is without merit. Specifically, Neu Cloud argues that, because "[e]vidence of IBM's

28

misappropriation of Neu Cloud's trade secrets was not required to prove Neu Cloud's claims in the state-court action," *res judicata* does not bar the instant DTSA claim. Appellant's Reply Br. at 31. Neu Cloud, however, has pointed to no authority from the New York state courts suggesting that a certain degree of evidentiary overlap is *required* for *res judicata* to apply. Nor could it. The New York Court of Appeals has explicitly rejected this proposition, stating that "the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." *O'Brien*, 429 N.E.2d at 1160; *see also Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110–11 (2d Cir. 2000) (noting that, for *res judicata* to apply under New York law, the facts at issue in the subsequent suit must have been "present" in the first suit but "need not be the same as the facts that were *necessary* to the first suit" (emphasis added) (citations omitted)). Thus, for purposes of New York preclusion law, the relevant question is one of evidentiary *convenience* rather than evidentiary *requirement*—that is, whether the claims at issue "form a convenient trial unit." *Xiao Yang Chen*, 843 N.E.2d at 725 (citations omitted). Under this standard, we conclude that Neu Cloud's state-law and DTSA claims should have been brought in a single proceeding.

Neu Cloud, having failed to bring its causes of action together in a single action despite possessing the ability to do so, is now barred from asserting its DTSA claim. We therefore **AFFIRM** the judgment of the district court dismissing Neu Cloud's amended complaint.

## CONCLUSION

Neu Cloud could have raised its DTSA claim in the prior state-court action. It did not, instead filing two complaints in separate judicial systems to challenge the same conduct committed by the IBM Defendants. As a result, Neu Cloud is barred from bringing its DTSA claim, and we **AFFIRM** the district court's judgment on the alternative basis of *res judicata*.